## M'Cormick *against* M'Murtrie.

The field notes and other official proceedings of a deputy surveyor may always be given in evidence to explain his acts.

A deputy surveyor may, after a survey made, protract the original lines and embrace more land; but as the lines run and marked on the ground constitute the true survey, it is a fact for the jury to determine, whether the survey returned, and that actually made, are the same.

If a man be induced by another to enter upon land as a settler, and expend his money in improving it, he who offers such inducement shall not afterwards allege any thing against such title; but if he who enters knows that the title to land is in dispute and goes in to take his chance, the rule does not apply.

A purchaser at sheriff's sale may have a better title than the debtor had at the time of the sale; his title dates, in many respects, from the lien of the judgment; he holds discharged of latent trusts, and of intervening conveyances, leases and incumbrances made by the debtor.

ERROR to the common pleas of *Huntingdon* county.

This was an action of ejectment by David M'Murtrie, against David M'Murtrie, Jun. and Alexander M'Cormick. The plaintiff claimed under a warrant to George Allen, dated the 29th of July 1762, on which a survey was made on the 7th of October 1762, by Samuel Findlay, assistant deputy surveyor; and in order to establish the fact that the land in dispute was included within the survey, the plaintiff offered in evidence the field notes of the assistant deputy, after having proved that they were found among his papers after his death, which hapened in 1805. This evidence was objected to by the defendant, but the objection was overruled and exception taken.

The defendant claimed under a warrant to Alexander M'Cormick, dated the 1st of March 1795, upon which a survey was made the 18th of December 1801, and which included the land in dispute. The questions of law which arose are sufficiently stated in the opinion of the Court, which was delivered by

SERGEANT, J.—The plaintiff below claimed under two titles. The first was a warrant, dated the 29th of July 1762, to George

[M'Cormick v. M'Murtrie.]

Allen, for three hundred acres, on which a survey of that quantity of land was made on the 7th of October 1762, by Samuel Findlay, assistant deputy surveyor, and returned into the surveyor-general's office on the 7th of January 1763. The defendant claimed part of the land contained in the above warrant and survey, under a warrant to Robert M'Cormick, dated the 16th of July 1816, for sixty acres, including an improvement interest from the 1st of March 1784, on which a survey was made, the 6th of August 1816, of fifty-nine acres and sixty-two perches, the land in dispute. The defendant gave evidence to show that the lines of the Allen survey existing on the ground, as marked by two white oak corners referred to in that survey, excluded the land in dispute. The plaintiff gave in evidence the field notes of Samuel Findlay, as follows:

"October 7th, 1762, surveyed for Scull, on a three hundred acres warrant to George Allen, dated the 29th of July 1762, adjoining Jacob Gardner, beginning at a white oak on the south side of Shaver's creek, below said Gardner's land; thence by ditto north thirty-four degrees; west two hundred and thirty-two perches to a white oak; at the end of twenty-two perches crossed Shaver's creek, south thirty degrees, west two hundred and fifty-two perches to a white oak; at twelve perches from last crossed a small run, south forty degrees, east one hundred and fifty perches to a hickory on the bank of Shaver's creek; thence up the creek; at sixty perches crossed run; at one hundred perches crossed again; up Shaver's creek north twenty-five degrees, east twenty-eight degrees to the mouth of the ———, thence up, by a barren hill, said line to the beginning, about thirty perches to the eastward of the creek, which will be on the ——— line,—drafted three hundred acres and three-fourths.

"N. B. There is forty-two perches added to the end of the line, first course from the white oak, which makes it two hundred and seventy-four perches. Also, the third course extended forty-two perches to answer the first course; and the second course ran parallel." With this was a draft tabled from the field notes, as surveyed for George Allen, &c. The lines extended as in this N. B., comprehended the lands in dispute.

The first error relied on by the plaintiff in error is, on the admission by the court below of the field notes of the assistant deputy surveyor. But in this, we think, there was no error. The field notes, and other official proceedings of the deputy surveyor, have always been admitted in explanation of his acts, when offered by any party interested.

The next errors are in the charge of the court. The court say, that "the lines on the ground constitute the true survey. The first inquiry is, did the surveyor extend the lines after he made the survey. After a survey has been made, and the surveyor finds he has not a sufficient quantity, he may extend the lines by protraction; and the warrant holder will hold the same so added, if no intervening

IV.——Z

right commences before the return and acceptance in the office."
They were then requested by the defendant to instruct the jury:
1st. "That if the jury believe that J. Armstrong, in returning the
survey of George Allen, adhered to the *marked corners* and lines on
the ground which exclude the land, then the plaintiff is not entitled
to recover." Answer: "To this the court accede." 2d. "That
the corners run and marked on the ground constitute the true survey;
and if the return draft of Allen calls for the white oak marked corner,
the survey can go no further." Answer: "To this the court ac-
cede. It is a general principle. But the jury will judge whether
the return did call for those corners short of the distance of forty-two
perches; and whether the whole extent of the plotting was not re-
turned."

In these instructions the court seem fully to admit that the lines
run and marked on the ground constitute the survey; that in cer-
tain cases the deputy surveyor may, after a survey made, protract
the original lines, and embrace more land; and that it was a ques-
tion for the jury, on the evidence, whether in his return he adhered
to the first lines run, and called for the corners of those lines. But
they do not say that an additional quantity may be introduced by
mere plotting on paper; and the plaintiff contended, that the pro-
tracted lines were run and marked on the ground. To be sure, after
a lapse of nearly three-fourths of a century, marks and corners may
have disappeared from various causes, and the evidence may not be
precise and full. But it seems to me a strong case must be made
out to overturn, on this ground, the presumption arising from a survey
returned and accepted more than fifty years before the new warrant,
recognized by adjoining surveys at the time and afterwards, and
accompanied by acts of ownership. In this there was no error.

But the plaintiff also claimed as the owner of the new warrant
and survey of 1816, which passed by purchase at sheriff's sale to
William Connelly, and was sold by him, in 1821, to James Myton.
Myton became embarrassed, and many judgments were obtained
against him from 1821 to 1828. On one of these his title was sold,
in 1831, to the plaintiff in this suit, who paid the purchase money,
and received a deed from the sheriff. The money was appropriated
to the payment of prior judgments. The defendant, to rebut this
title, alleged, that Myton encouraged and assisted him to settle on
the tract; in consequence of which the defendant erected a building
on the premises, and made improvements. He then requested the
court to instruct the jury, "if the testimony of James Myton and
Thomas Ralston is believed by the jury, then James Myton having
agreed and consented to A. M'Cormick making his improvement,
and having induced and assisted in the building of his house, &c.,
he could not, if yet the owner of the estate purchased by Connelly
at sheriff's sale as the property of R. M'Cormick, recover in eject-
ment from the defendant now, if the warrant and survey of Robert
M'Cormick were vested in him; and that the sheriff's alienee,

[M'Cormick v. M'Murtrie.]

David M'Murtrie, stands in no better situation than Myton, and could not recover on that warrant and survey." To which the court replied: "it is said Myton abandoned; encouraged the defendant to settle; and that he shall be postponed; and that the purchaser at sheriff's sale stands in no better situation. We agree, that when a man encourages another to settle, to improve and expend his money, he shall be postponed. But is this that case? Here the defendant knew of Myton's title; he knew of M'Murtrie's claim; he wanted to try the first chance; Myton only wanted an acre and a half about the mill; here was a clear case of experiment; an arrangement by a man indebted, greatly indebted, for certain purposes, whose title was bound by the judgments against him, going into an arrangement which might affect his title to the land. Is the defendant an innocent man expending his money at the instance of Myton? On the other hand, is it not a speculating and fraudulent settlement? Myton could not have conveyed it by deed to affect the giving judgment. We submit to you whether the case comes within the principle stated. We agree that the purchaser at sheriff's sale only takes the title of defendant; but he cannot be affected by any secret trust."

There was no pretence whatever for the defendant's claiming an equity on the ground of encouragement to improve given to him by Myton. That doctrine applies only to a *bona fide* improver, who is led into a mistaken expenditure by the acts or connivance of another, supposing the property to be his own. Here the defendant knew the land was in dispute between these parties; and volunteered to originate a new claim which might prevail against the plaintiff. He desired to make an experiment, and agreed to take his chance. He cannot complain if the chance fails. No imposition was practised on him; he was led into no mistake. On the contrary, it wears very much the appearance of a combination to speculate on another title by improvement, and divide the tract between them, if successful. No boundaries between themselves were named: no ascertainment of their respective rights. It was the joint act as well of Myton as M'Cormick; and those claiming under either cannot avail themselves of it.

As to the permission of Myton, treated as a transfer of his title, it was of no avail against the plaintiff, if he claimed under a sheriff's deed founded on judgments against Myton prior to such permission. It is not correct to say, the purchaser at sheriff's sale has no better title than the debtor had at the time of the sale. His title dates, in many respects, from the lien of the judgments. He holds, discharged of latent trusts and of intervening conveyances, leases and incumbrances made by the debtor. If it were not so, the debtor might dispose of the land, and thus defeat the judgment creditors: whereas, the general rule is, that the sale on the judgment overreaches the *mesne* acts of the debtor, and passes the title discharged from them. The acts of assembly of 1802 and 1814 give relief

only to persons claiming against the sheriff's deed by title paramount to the defendant's title, or by title derived from the defendant prior to the judgment. Any other person in possession must surrender it to the purchaser, or may be ejected by summary process. "No contract," says Mr Justice Duncan, in Lennox *v.* M'Call, 3 *Serg. & Rawle* 97, "between the lessee and the debtor can deprive or delay the creditor of the benefit of his judgment, or the purchaser at sheriff's sale of the benefit of his purchase. A lease can no more deprive them of their rights than a conveyance in fee simple. A debtor might give a lease for any number of years, receive the whole rent in advance, and thus deprive the purchaser of all benefit from his purchase till after the expiration of his lease." The same may be said of all other modes of transferring the land, or impairing its enjoyment. In charging the jury to this effect, therefore, we think the court committed no error.

Judgment affirmed.

*Potter*, for plaintiff in error.
*Bell* and *Miles*, for defendant in error.