# M'Kelvey *against* Truby.

Where a man encourages another to settle upon and improve land and expend his money and labour upon it, he will not afterwards be permitted to take it from him, although he has an older and better title for it; and although his encouragement was given in ignorance of his own rights.

ERROR to the Common Pleas of *Armstrong* county.

Rebecca M'Kelvey and James M'Kelvey against John Truby and others. This was an action of ejectment for 56 acres of land. The plaintiffs gave in evidence a warrant and survey and patent to James Glentworth for a tract of land containing 415 acres, and exhibited a regular chain of title vesting the same in Rebecca M'Kelvey and David M'Kelvey as tenants in common. They intermarried, by which the whole estate became vested in the husband and wife. David M'Kelvey died, and his undivided half descended to James M'Kelvey the plaintiff. It was conceded that this survey originally embraced the land in dispute, inasmuch as it called for a survey in the name of Davidson as a boundary. When M'Kelvey purchased the land and commenced his improvements, he employed a surveyor to run the lines, who excluded the land in dispute; at another time he had the lines run again by an experienced surveyor, who also excluded it, leaving it as vacant land lying between M'Kelvey's land and the Davidson survey. After this a warrant was taken for it as vacant by Alexander Caldwell, under which the defendants claimed. The proof was, by the defendant, that M'Kelveys, both before and after the warrant was granted to Caldwell, disclaimed owning the land, said it had been vacant, that M'Kelvey was present at and assisting in raising the buildings for the defendants, and lived almost within sight of them, and that David M'Kelvey never claimed the land during his lifetime.

WHITE, President, instructed the jury, that the plaintiffs had shown a perfect legal title for the land in dispute, and were entitled to recover unless they had precluded themselves by their conduct. But if the jury believed that before the warrant was granted to Caldwell, M'Kelvey, after having his land surveyed and examined, declared that the land in dispute was vacant, and that he did not claim it, and that after the purchase of it by Truby, he encouraged him to improve it, and to expend his money and labour upon it, which he did, to the amount of $700 or $800, the plaintiff was not now entitled to recover, although he was ignorant at the time that he had a good right and title to the land; and that Rebecca

M'Kelvey was equally bound by such conduct, although a feme covert at the time.

*Buffington,* for plaintiff in error.   As a matter of fact as well as law, there was no vacant land between the Glentworth and Davidson surveys.   The plaintiff was innocently led into the error of supposing that there was vacant land there.   This was the mistake of the surveyors.   The question then is, whether the mistake, by reason of which he encouraged the defendant to improve the land, is to postpone his legal title.   The parties were both mistaken as respects the fact; and the land-office was a source common to them both by which the certainty could be ascertained. It was the duty of the defendant to make inquiry there, and ascertain that the land was not appropriated before the Caldwell warrant issued.   9 *Watts* 109; 11 *Serg. & Rawle* 340; 3 *Watts* 238. But Mrs M'Kelvey was a *feme covert,* and as to her half of the land she could give no consent or encouragement.   7 *Johns.* 8; 10 *Johns.* 440.

*Foster,* for defendants in error.   The principle is clearly settled, that whatever the plaintiffs' title may be, they are estopped from asserting it under the circumstances proved.   For even if the defendants, or Caldwell, under whom they claim, had clearly ascertained the fact at the land-office or elsewhere, that the land had been included in the Glentworth survey, yet if the plaintiffs had had a survey made excluding it and disavowed their ownership, declaring that it was vacant, it was competent for Caldwell to purchase a warrant for it; and if he did so, and sold to Truby, who improved it, with the knowledge and consent of M'Kelvey, equity forbids that they should now be permitted to disavow all this under a pretext of mistake.   7 *Watts* 400, 163; 10 *Serg. & Rawle* 43; 4 *Serg. & Rawle* 242; 4 *Watts* 195.

The opinion of the court was delivered by

Huston, J. — The plaintiffs here were plaintiffs below, and showed a warrant, survey and patent to James Glentworth, and a regular chain of title to Rebecca M'Kelvey for one undivided half of the tract, and to David M'Kelvey for the other half. These two intermarried and thus owned the whole. About twenty-five years before this suit, David M'Kelvey came with his wife and settled on this tract, and soon after brought a surveyor to run round it, and show him his lines.   The surveyor found the line adjoining the disputed ground, but as he had a draft with a wrong course and distance on the next line, they went no farther.   Soon after, Col. Orr, a surveyor of known skill, was brought, and he began and ran round the tract so as to leave the line in question for his last course; he found all the lines, and this last one to the river as it had been found by the first surveyor.   All this was

[M'Kelvey v. Truby.]

done in the presence and at the instance of David M'Kelvey. The lines of a tract in the name of Davidson, near this, were run and found, and it appeared there was some land between the two tracts not within the lines on the ground of either survey. I forgot to mention that Col. Orr made a calculation, and M'Kelvey's survey contained a little more than was called for in his patent. A third surveyor was on the ground and found this same line. It was of the right age, and the course and distance agreed with his draft. A Mr Spear and Caldwell took out a warrant for the space between the Glentworth and Davidson tracts. There were more than enough of witnesses who heard M'Kelvey say that was his line; he cleared to it part of the distance; and after the part now in dispute was settled, he showed Truby and others his line; said he came that far, and where there is timber on both sides of it, said they must not cut any on his side of it. He showed his line to a person proposing to purchase Truby's, or a part of it. There was also full proof that David M'Kelvey, now deceased, knew of this piece of land and called it vacant long before any warrant was taken for it. The warrant was taken by Spear and Caldwell, in the name of Caldwell, who got a patent in 1830, and sold to Robison and Rohrer for $133, and they sold to Truby, who soon after began to improve. Old Mr M'Kelvey wished him luck of his purchase; said he was glad he had bought it. Old Mr Truby's sons came on to it, each built a house, one of them a barn, and the other a blacksmith shop: the buildings at the time this suit was brought were estimated at from $700 to $900. James and William M'Kelvey were at the raising of their buildings, and as the houses were near, Mrs M'Kelvey was there every week and sometimes every day; all very friendly. Old M'Kelvey died; and there was some coal found in the hill, and it is near the town of Kittaning; and somehow it was discovered that the Davidson and Glentworth surveys as returned in the surveyor-general's office, call for adjoining each other; and this suit was brought—old Mrs Rebecca M'Kelvey declaring that she would not have brought it, but the boys would have it so. Some of the improvements were made in sight of her, before and after the death of her husband.

It was assumed in the court below, and argued here, that the land in question was embraced in the Glentworth survey; it must then have been plotted in, for the lines of the age of the survey exclude it: but I shall suppose this to have been the case, and that although added to the survey by protraction, M'Kelvey might once have held it. The judge very properly left all the facts to the jury, and stated the law correctly, as I consider it settled in this State and elsewhere. I shall refer to only a few cases: *M'Cormick* v. *M'Murtrie*, (4 *Watts* 195), where a man encourages another to settle, and to go on and expend money and labour, he shall not afterwards take the land from the improver, though he has an older and better title. *Epley* v. *Witherow*, (7 *Watts* 163), if a

[M'Kelvey v. Truby.]

man having a right stands by and sees land sold as the property of another, and gives no notice of his claim, he ought to be and will be postponed, though he shows a better title. This opinion was delivered by Justice Kennedy, who, in page 168, has cited very many authorities. In *Carr* v. *Wallace*, (7 *Watts* 394), it is said, " there is no principle of equity and public policy better settled than this, if one knowingly though passively suffers another to purchase and spend his money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person." I will add, that it is possible the plaintiff never had any right to this land. I fully admit the general rule, that where two surveys call to adjoin each other, they shall adjoin. Generally the difficulty has arisen where the line of one survey has been run, and the survey next made calls for it as one of its lines; that shall be the line of the two surveys, though it gives more land than the surveyor intended.

*Wiedman* v. *Filmsley*, a case twice tried, once before Judge Walker and again before Tilghman, was this: William Maclay, in making a survey for Janet Sharon, ran and marked the western line, and then laid a survey adjoining it for B. Wistar. At night, when he calculated Janet Sharon, he found he had included on a 300 acre warrant, 450 acres. This was soon after the proprietary regulation, forbidding a deputy-surveyor to return above ten per cent. above the quantity called for in the warrant. Next morning he sent a person to measure back a certain distance from the western corner of Janet Sharon, and run a new western line, throwing out 120 acres; and this was done, and the line marked: but Mr Maclay forgot this, and returned the Wistar and Sharon survey as adjoining each other. This was proved by Mr Maclay in court, and a warrant taken twenty years after held the 120 acres. In both courts a distinction was taken between the case where only one line was run and that intended to be the line of both surveys, and the case where each survey has its own lines distinctly marked, and those lines 40 or 60 more perches apart. The case was governed by the parol proof of Maclay. I lost the cause in both courts; and, as often happens, was not then nor yet entirely satisfied with affecting the returns of survey by parol evidence: but I mention this to show the plaintiff that he may possibly have been mistaken on more than one point as to his rights.

Judgment affirmed.