## BRATTON et al. *v.* MITCHELL.

1. A bill of exceptions, to the charge of a court, should be taken before the jury delivers its verdict in open court; and a request " to charge the jury in a certain way, and to file the opinion of record," is not equivalent to a bill of exceptions so taken, without which, the charge of the court filed in pursuance of such request is not a subject for the assignment of error.

2. Where A. bought lands for B., paying for them with B.'s money, and receiving a conveyance of them to himself, and died before he conveyed to B.; an assignment by B. of the lands in question on the back of the deed to A., is admissible in evidence for one claiming title under B.

3. A warrant and survey offered for the purpose of showing an interference with another survey, which were proved to have come from the office of the proper deputy surveyor, to have been received by him as office papers, and in the handwriting of one of his predecessors, were properly received in evidence.

4. Defendant in ejectment having shown, that one under whom he claimed had been tenant of the premises under A., it is competent for the plaintiff to show a sale from A. to that tenant. Where the defendant in ejectment sets up title in various ways, the plaintiff may give the defendant's titles in evidence, when he declines doing so himself.

5. A verdict and judgment between the same parties or their privies, on the same subject-matter, is evidence in a subsequent suit.

6. When a warrant and survey were offered in evidence, which neither interfered with the survey of the land in dispute, nor adjoined it, it was properly rejected.

ERROR to the court of Common Pleas of Mifflin county.

*May* 22. This was an action of ejectment brought by George Mitchell against C. Landis, J. Bratton, and C. Bratton, for a tract of land, in Olive township, Mifflin county. The facts of the case are presented in the charge of the court below, and in the opinion of this court. In the court below, WILSON, President, charged the jury as follows :—

" George Mitchell, the plaintiff, claims title to the land in dispute under Frederick Lazarus, to whom a warrant issued on the 26th of November, 1793, and on which a survey was made on the 15th of May, 1794, and returned to the land-office, 19th November, 1795. The death of Frederick Lazarus is proven, and his heirs by their deed, dated the 2d of November, 1837, convey to George Mitchell, the plaintiff, by which, George Mitchell became the owner of whatever title Frederick Lazarus or his heirs had to the lands, within the survey on that warrant. The defendant has shown that the tract surveyed on this warrant, in the name of Frederick Lazarus, was patented to John Frees, on the 1st of December, 1795. The patent recites a deed-poll from F. Lazarus to William Bratton; a deed from Bratton to John Frees, the patentee. This is all that is shown by either party of the legal title, and the defendants do not pretend to

show any title in them, derived from the patentee; and their evidence shows that they are holding adverse to the legal title granted by the Commonwealth, to either F. Lazarus or John Frees. The intermediate conveyances recited in the patent, as conveying the title of Lazarus to John Frees, are not shown. Had they been shown, the plaintiff, who, in ejectment, must recover on the strength of his own title, could not have recovered; for, in that case, the heirs of Frederick Lazarus would not have any estate or interest in the land to convey, and their deed to Mitchell would be no better to him than so much blank paper. But the bare recital of these conveyances in the patent are not evidence of those conveyances against the warrantee, when the defendant does not show his possession under, but adverse to the title granted by the Commonwealth to Frees, the patentee. This patent then cannot prevail in this case, as it stands before us, against the title claimed by the plaintiff through the warrantee. The defendant alleges an improvement made by Robert Elliott, previous to the location of the warrant, which included a part, and the part in dispute of the Lazarus survey. You will observe from the evidence, that the house of Elliott is not on the Lazarus tract, but some considerable distance from it. The land, cleared about the house or cabin, called Elliott's, does not extend to the Lazarus tract. A small field was also cleared up towards the mountain, not on the Lazarus tract; but a small field on the line of the Lazarus survey, some of the witnesses say, was cleared over on to Lazarus's. They do not say when it was cleared, or by whom. Montgomery says there was none cleared over; Andrew Bratton does not recollect to have seen any cleared over. That the Brattons claimed land there, under the Elliott improvement, is not disputed. But did their claim under that improvement extend to the Lazarus survey. Under the improvement they have not taken up; or, at least, not shown us, that they have taken up any land by warrant from the Commonwealth. Mr. Bratton speaks of vacant land there, but not sufficient to fill a warrant of four hundred acres. It is not shown to us, when the vacant part was confined to the quantity now vacant by the location of their warrant on the adjoining land, except the warrant of Frederick Lazarus. There may, for any thing that appears in evidence, have been at the time the Lazarus survey was located, more than four hundred acres vacant. That the adjoining surveys were made previous to Lazarus's survey, so as to leave the quantity that could have been taken up on the Elliott improvement, has not been shown. Then, if the other surveys now located —if there are any—were not located, until since Elliott made his im-

provement, how is it to be known, without the settler designates his boundaries, in what direction from his house he is going to take up his three hundred acres on his improvement. Men, who go to the land-office, and take out their warrants for land in the neighbour-hood, are not all bound to keep at such a distance from the improve-ment, so as that the improver can by his three hundred acres, in what direction he pleases from his improvement, include it. If the defendant had shown, that warrants and surveys encroached on his improvement, so as not to leave sufficient vacant land to fill up a war-rant of the three hundred acres, or leaving that much for the Elliott improvement, without taking a part of what is surveyed on the Laza-rus warrant, there would be some reason for the argument of the de-fendant's counsel, that it all should be taken from Frederick Lazarus, or the land on which Frederick Lazarus is located.

" The question for you, in the first place, under the evidence, is to say, whether Robert Elliott, or the Brattons, whose claim is the same, claimed by virtue of their improvement, any part, or the part of the Lazarus survey included in the lines run on the McDonald warrant, and have kept up their improvement without abandoning that claim. If they have, it will prevail against the title of the plain-tiff, as further evidence to show that they claimed and are entitled, by their improvement, to the land in dispute. They show that the last person in possession of the Elliott house was sailor Billy Brat-ton, jun., who, about 1819 or 20, moved from the old building, to a new house put up within the lines run for McDonald on the Lazarus survey. The old improvement was not kept up after that. It ap-pears that Billy Bratton went on to this land in the new house, claim-ing under the McDonald warrant. If the Brattons abandoned this old improvement, or, by it, did not include in their claim the part now in dispute, which is the part included within the lines run on the McDonald warrant, the plaintiff would be entitled to recover. If you find that they did not abandon their claim, and in their claim you are satisfied they included the part in dispute, the defendant would be entitled to a verdict. Should you find for the plaintiff, your verdict will be for the part only in the defendant's possession, which is included in the lines of Lazarus's survey."

The jury found for the plaintiff.

The errors assigned, which were considered here, are clearly and specifically stated in the opinion of the court.

*Fisher*, for plaintiff in error.—The admission in evidence of the assignment endorsed on the back of the deed from Dorcas Stack-

pole to Anthony Elton, as one of the links in the chain of title, was, without proof of its execution, clearly wrong. This deed, and the assignment thereon, without proof of its execution, was given in evidence, without objection, on the former trials. The offer to give the assignment in evidence, on the part of the plaintiff, was objected to on the ground that its execution was not proved ; but the court said, that the evidence given on the former trial had been made part of the record, and therefore overruled our objection.

There was no conveyance, or proof of conveyance, from Elton to Dorcas Stackpole.

It is a general rule, that where a particular authority is confided to a public officer, to be executed by him at his discretion, upon an examination of the facts, of which he is the appropriate judge, his decision upon those facts, in the absence of any controlling provisions, is absolutely conclusive as to the existence of those facts, (in this case it was the granting of an amended patent,) and his acts can only be set aside for fraud, collusion, or errors apparent on the face of the patent. Allen v. Blunt, 7 Law Rep. No. 4.

A patent for land in Pennsylvania is evidence that all previous steps leading to it have been regularly pursued. Brown v. Galloway, Peters's C. C. R. 291.

Recitals in a patent are evidence against all who only show possession. Whitmire v. Napier, 4 Serg. & Rawle, 290.

A patent is *primâ facie* evidence of title and of survey. James v. Betz, 2 Bin. 12.

The recitals in a warrant of acceptance are evidence against the proprietary; but not against one claiming adversely to the survey, before its return. Bonnet v. Devebaugh, 3 Bin. 175.

A patent is *primâ facie* evidence of its contents. Bixler v. Baker, 4 Bin. 212.

He also cited Nieman v. Ward, 1 Watts & Serg. 79 ; Penrose v. Griffith, 4 Bin. 231 ; Corry v. Claxton, 4 Bin. 140.

*Banks* and *Benedict*, for defendant in error, argued that the defendant in error held by conveyance of the title of the heirs of Frederick Lazarus, the warrantee, and by deed of the then treasurer of Mifflin county to Dorcas Stackpole, to George Mitchell. That although the deed was made to Anthony Elton, the proof was, that he purchased for Dorcas Stackpole, and she conveyed by deed, duly acknowledged, to George Mitchell.

That the warrant and survey in the name of James McDonald, was not given in evidence to show title, but the boundary and extent

of the claim of McDonald, and of Bratton under him. That the record of the action offered on the part of the defendants below, and rejected by the court, was not the record of an action between the parties in this ejectment; and that the warrant and survey, in the name of Thomas Holt, on the improvement of John Foutsey, did not embrace the land in dispute, or any part of it.

*June* 25. Burnside, J.—The president of the Common Pleas, in the charge returned, has endorsed that "no exception was taken to the charge or answers of the court to the defendant's points at the time they were delivered, or at that court. The charge was filed at the request made by the defendant's counsel, at the time he submitted his points. His request to instruct the jury is in these words: "The court is requested to charge the jury as follows, and to file their opinion of record." It was the duty of the counsel to have requested a bill of exceptions to the charge, before the jury delivered their verdict in open court. Jones et al. *v.* Insurance Company, 4 Dall. 249; S. C. 1 Bin. 31, 8 Serg. & Rawle, 211, 1 Pa. St. Rep. 303. This court has ruled, that unless an exception is taken at the trial, or before the verdict is rendered, the judge's charge, filed pursuant to a request made subsequent, is not a subject for the assignment of error.

1. The first bill of exceptions was to the court permitting the plaintiff to give in evidence the endorsement (as it is called) on the deed from Ard, the treasurer of Mifflin county, to Anthony Elton, by Dorcas Stackpole, to George Mitchell.

The correctness of this evidence cannot be understood, without showing how the case then stood on trial.

Mitchell, the plaintiff below, had given in evidence a warrant and survey, (which was the prior title for the land in question,) in the name of Frederick Lazarus; a deed from the heirs of Frederick Lazarus, to himself; and then rested.

The defendant, Bratton, then gave in evidence the same warrant and survey, and a sale of this survey by Ard, treasurer of Mifflin county, for taxes, to Anthony Elton; and then rested.

The learned counsel for the defendant knew that Mitchell owned this tax title; for Mitchell recovered the whole of this tract of Lazarus (except the small part in controversy in this action) on that tax title, against Bratton, in No. 27, January Term, 1823, which was often before this court.

This was within a subsequent survey of McDonald, that interfered with the prior survey of Lazarus. The record in the prior eject-

ment referred to, between the same parties, fully showed that Elton was the agent of Dorcas Stackpole; that he bought the tract for her, and with her money, but died before she conveyed. The endorsement on the treasurer's deed objected to, was a deed of assignment, from Dorcas Stackpole to George Mitchell, duly acknowledged.

There was no error in admitting the deed of assignment.

2. The second error assigned is, that the plaintiff below was allowed to give in evidence, from the office of the deputy surveyor of Mifflin county, the warrant and survey of James McDonald for thirty acres, to show that it interfered with the survey of Frederick Lazarus.

The proper deputy surveyor proved that these papers came from his office, and had been received by him as office papers, from his predecessor. The survey was in the handwriting of M. M. Monohan, who had been, first an assistant of Mr. Harris, and for many years after the death of Harris, his successor in the office. Such an exception would not have been taken by the old land lawyers of Pennsylvania. Such papers have ever been received in evidence. 2 Yeates, 313, 6 Bin. 125, 14 Serg. & Rawle, 372, 11 Ibid. 314, 4 Watts, 192.

3. The third error complained of was the admission in evidence of an assignment of the 30th December, 1819, between James McDonald and sailor Billy Bratton, showing a sale of the McDonald claim, to William Bratton, jun.

I can see no objection to the plaintiffs giving the defendant's title in evidence, when he declines doing it himself; especially when he sets up title to the land in various ways. But the defendant below had given evidence of sailor Billy Bratton being at one time within the survey of McDonald, as his tenant.

4. The fourth error is in rejecting the record No. 56, of November Term, 1828, in the ejectment between Charles Bratton v. Charles Landis.

The rule is, that a verdict and judgment between the same parties, or their privies, on the same subject matter, is evidence in a subsequent suit. 4 Rawle, 273. The record offered wanted these requisites, and was therefore properly rejected.

5. The last error is in rejecting the warrant and survey in the name of Thomas Holt.

This warrant was dated in 1816. The official draft was for fifty acres, including an improvement in the name of Ritz, adjoining the heirs of Samuel Bratton, Dorcas Stackpole, and others, with proof

of where it lies.    This was offered to show, that the title of the heirs of Samuel Bratton was acknowledged as well by the Commonwealth as by the adjoining owners, and to show the boundary to which Bratton claimed.    There was no pretence that the warrant and survey of Holt interfered with the survey of Lazarus or McDonald; nor was it alleged that it adjoined them.    Where Thomas Holt lay, was perfectly immaterial to the issue trying.    One of its calls was for the heirs of Samuel Bratton.    It is usual to give in evidence adjoining surveys to fix the boundary, and in cases where surveys call for the same marks on the ground, they may be very material.    But nothing of this kind was alleged, or presented to the consideration of the court.    I am unable to discover, that the survey of Holt had any relevancy to the question trying.    The court was therefore right in rejecting it.

In Pennsylvania, it has become a great evil in the administration of justice, the offering, and frequently giving of irrelevant evidence. The object is often to raise a false issue before the jury.    The evidence should be confined to the question trying; then the court and jury would not be perplexed and embarrassed with irrelevant matter. This would facilitate the trial of causes, and save much time in the discussion of immaterial questions.

Judgment affirmed.