## Miller *versus* Miller.

1. A tenant in common being in possession, by will which was read in the presence of his co-tenant and witnessed by him, devised the whole tract. This was an open and unequivocal claim of an adverse title and amounted to an ouster of his co-tenant.

2. A father settled on patented land supposing it to be unappropriated and sold the land to a son by parol, the consideration being that the son should support the father and his wife, should take out a warrant, &c., for the land, pay the purchase-money and take out a patent. The son took possession of the land, made valuable improvements and performed his agreement. The title was perfected against the original patentee by the Statute of Limitations in favor of the father and his heirs. *Held*, that the father and his heirs were estopped.

3. When one encourages another to settle on land and expend money and labor on it, he cannot afterwards take the land from the improver, although he has an older and better title, and is ignorant of his rights.

November 17th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* No. 75, to October and November Term 1868.

In the court below this was an action of ejectment for three undivided seventh parts of a tract of 160 acres of land in Aleppo township, brought by George Miller against Jacob Miller. The writ was issued March 11th 1865. Both parties claimed under Jacob Miller, the elder, who was the father of the plaintiff and the grandfather of the defendant. The elder Miller died in 1839 intestate, leaving a widow, Ann Miller and seven children, of whom the plaintiff was one and William Miller, the father of the defendant, another. Two of the children conveyed their inte-

rests to the plaintiff. On the trial, before Gilmore, P. J., the plaintiff gave in evidence the above facts, and that the defendant was in possession. It also appeared by the evidence of the plaintiff that the whole tract had been granted by patent from the Commonwealth to persons named Hughes and Ryan; that the elder Miller, in 1824, which was long after the grant, entered upon it and claimed it; he built a house, cleared land and lived there till his death. It did not appear that either the father or his son William knew that the land had been thus appropriated.

The title of the elder Miller and his heirs was perfected as against Hughes and Ryan by an adverse possession of more than twenty-one years.

The defendant gave evidence that in 1837 the father sold the land to his son William by parol. The consideration was that William was to keep his father and mother during their life; William to lay a warrant on the land to pay the purchase-money to the Commonwealth; the warrant was to be taken out in the name of William. He took possession of the whole land after the agreement with his father, and continued in exclusive possession until his death in 1842; he cleared about 14 acres and fenced it, built a house after his father's death, put up the frame of a barn with other buildings; paid the taxes and supported his father and mother. The defendant gave in evidence the will of William Miller, dated October 5th 1843, to which George Miller was one of the witnesses, and that he was present when the will was read. One of the provisions of the will was the following:— "Further, I wish my farm to be rented out, and its proceeds applied to the benefit of my family until my youngest daughter, Elizabeth, becomes eighteen years of age, and then my real estate is to be equally divided in metes and bounds, quantity and quality, amongst my children."

He gave in evidence the application of William Miller to the land office for a warrant, his oath of settlement, and that to the best of his knowledge the land was unappropriated; the issue March 5th 1838 of the warrant, for the consideration of $200, being at 10*l.* per 100 acres and interest from May 24th 1824; proceedings in partition of the land in 1864, in the Orphans' Court, as the estate of William Miller, deceased; sale June 7th 1865, under these proceedings, to Adam Wise; and patent September 14th 1866, to Wise, who is defendant's landlord. There was very much evidence to prove the sale from the elder Miller to William, valuable improvements by William, exclusive possession by him and those claiming under him for more than twenty-one years.

The plaintiff gave much evidence in rebuttal of the defendant's case, amongst which was evidence that William had said that he claimed only as heir, &c.

10 P. F. Smith—2

[Miller *v.* Miller.]

The plaintiff's 3d and 4th points, and the defendant's 1st and 2d points, with their respective answers, were as follows :—

Plaintiff's 3d point: In order to enable the defendant to defend under the plea of the Statute of Limitations, he must show an actual adverse, exclusive, distinct and notorious continued possession for a period of twenty-one years. And in this case, if the jury believe the testimony, that old Jacob Miller remained in possession until his death in 1839, and his widow till 1845, and owned the same, there was at his death (he dying intestate) a descent cast upon his heirs; and if the jury believe the testimony of Joseph Bisset, John Kimble, Elias Mackey and others, that William claimed only a share, there was no such exclusive possession as to bar the plaintiff's right to recover.

Answer: "We are clearly of opinion that the Statute of Limitations could not commence to run till after the death of Jacob Miller. Of course there could be no ouster until after his death. If the defendant is entitled to retain his possession under the plea of the Statute of Limitations, it must be on the ground that there was an ouster of the co-heirs of Jacob Miller twenty-one years before the bringing of this suit. To establish an ouster between co-heirs there must be some plain, decisive and unequivocal act or conduct of the parties claiming, amounting to an adverse and wrongful possession in himself and disseisin of his co-heir. The disseisor must have the intention to hold the premises adverse to his co-heirs, but it is not necessary that he should make a formal declaration of this intention to his co-heirs, but while this is not required he must manifest by his conduct and acts that he holds possession hostile to his co-heirs. The making a sale or a will giving his estate to his children, as was done in this case, the will being witnessed by George Miller, would be a decisive, open, unequivocal act. But this intention to hold adverse may be abandoned, if he afterwards openly declared that he had relinquished his intention to hold the land for himself, and declared that he only expected to get his share; this would show that he was not holding adversely, and would be admission that his possession was not inconsistent with the rights of co-heirs, and there would be no ouster. He might renew his hostile possession, but as he died in 1843, there is not much evidence on this subject. In referring thus to this evidence we do not withdraw from you the character of this evidence; much of it is impeached, and it is wholly denied that the witnesses proving these declarations are worthy of belief. The witnesses on the part of the defendant are likewise impeached. You must judge of their credibility, and you are the sole judges of this."

"4. That in order to constitute an ouster of tenants in common or coparceners, there must be something more than the mere continuance of possession, or perception of profits and payment of

[Miller *v.* Miller.]

taxes, viz.: there must be such acts as denying the right of his
co-tenants, or other unequivocal acts resisting and setting at defi-
ance his co-tenants or coparceners; and if the jury believe the
testimony that he only claimed a share as an heir, and was trying
to buy land in severalty for himself, and other testimony that the
said William Miller only wanted his share, the defendant cannot
claim an ouster, and plaintiff is entitled to recover."

Answer: "This point is correct."

Defendant's 1st and 2d points:—

"1. The Statute of Frauds can have no application to this case,
if the jury find from the evidence that Jacob Miller sold the land
by parol to his son William, for the consideration of William's
agreement to support him and his wife during their lives; and at
the time of making the contract, and as a part thereof, directed
William to procure from the Commonwealth a warrant in his own
name for the land; that William faithfully performed his con-
tract, entered upon the land, cleared some 20 acres of it, erected
thereon a hewed log dwelling-house, a log stable, the frame of a
barn, &c.; and in consequence of and in compliance with his
father's said direction, procured from the Commonwealth a war-
rant in his own name; caused a survey to be made and returned,
and paid the greater part of the money due the Commonwealth,
together with office fees; doing all this in ignorance of the fact
that the land had been previously appropriated, and in the belief,
grounded on his father's said direction, that by procuring a war-
rant from the Commonwealth, he would secure a perfect title;
and that Adam Wise, who is the landlord of the present defend-
ant, and who had become the owner of the William Miller title,
after the bringing of this suit, paid the balance of the money
due the Commonwealth, and secured to himself a patent for the
land.

2. Under the facts stated in the foregoing point, Jacob Miller
and all persons claiming under him are estopped from denying
that Adam Wise has a good title, under the warrant and patent;
and that they may be so estopped, it is not necessary to prove that
William Miller took possession of the land after and in pursuance
of his said contract; or that he had exclusive possession; nor is
it necessary to prove the contract in the manner required in cases
arising under the Statute of Frauds. It is sufficient if it be proved
to the satisfaction of the jury as in ordinary cases."

Answer: "There is very little doubt but that old Jacob Miller
came upon this land in 1824 with the belief that the land was vacant
and had not been appropriated by the Commonwealth. He intended
and expected to originate a title by settlement and improvement, and
did not consider himself a disseisor. But his possession could be
imputed as a disseisin if the land was already granted, although
that was not his design. If he took possession, claimed it as his

[Miller *v.* Miller.]

own, and if he claimed to lines which he caused to be marked or claimed to lines already marked on the ground or other certain and ascertained boundaries, his possession would extend by construction to these lines or boundaries although the land was not all improved within the legal survey, but if he designated no boundaries his disseisin would only extend to his actual possession or what was improved. It appears from the showing of the plaintiff that long before the entry of Jacob Miller the Commonwealth had appropriated the land and confirmed her grant by patent to Hughes and Ryan, so that neither Jacob Miller nor any one else could acquire title to the land by settlement and improvement. We have no evidence of which we have any recollection that Jacob Miller knew that this land had been appropriated already by the Commonwealth, nor is there much evidence that William Miller was better informed. We therefore charge you that if the facts set forth in the defendant's points have been proved to your satisfaction, the plaintiff will not be entitled to recover. We hold that Jacob Miller and those claiming under him are estopped from asserting any title against William Miller and those claiming under him. It matters not that in this purchase from the Commonwealth he acquired nothing. If he acquired and paid for such title at the instance of Jacob Miller, and if he fulfilled the consideration of purchase to Jacob Miller and bought a title at his instance, he and all claiming under him are estopped to gainsay the title although it is not good and may not prevail against others. If you find the facts as set forth in these points you will be relieved from all further investigation of the evidence. If the plaintiff had not shown title to this property in Hughes and Ryan, the fact of William Miller taking out a warrant and procuring a survey for this land would have relieved this contract from the operation of the Statute of Frauds and Perjuries. This is a reason why this title which William Miller procured from the Commonwealth ought not to be gainsaid by the plaintiff."

The verdict was for the defendant. The plaintiff took out a writ of error, and assigned for error the foregoing answers to the 3d point of the plaintiff and the 1st and 2d points of the defendant.

*Purman* and *Sayers*, for plaintiff in error.—The court did not leave the question as to whether there was ouster to the jury. The assertion of right by one tenant in common by another must be notorious; the perception of profits only is not sufficient: Frederick *v.* Gray, 10 S. & R. 182; Hart *v.* Gregg, 10 Watts 185; Reading's Case, 1 Salkeld 392; Watson *v.* Gregg, 10 Watts 289; Hall *v.* Matthias, 4 W. & S. 336; Nickle *v.* McFarlane, 3 Watts 167; Tullock *v.* Worrall, 13 Wright 133; Bolton *v.* Hamilton, 2 W. & S. 294. The contract was within the Statute of Frauds.

[Miller v. Miller.]

There was no exclusive possession by William : Myers v. Beverly, 9 Wright 368 ; Moore v. Small, 7 Harris 467 ; Postlethwait v. Frease, 7 Casey 472 ; McKowen v. McDonald, 7 Wright 441 ; Big Mountain Imp. Co.'s Appeal, 4 P. F. Smith 361. Nor is there any estoppel : Duchess of Kingston's Case, 2 Sm. L. C. 417 ; Dabsell v. Odell, 3 Hill 219.

*Wyly & Buchanan* and *G. W. G. Waddell*, for defendant in error.—The ouster may be established by *any* unequivocal act amounting to adverse possession of the party claiming and disseisin of his co-tenant : Hart v. Gregg, Hall v. Matthias, Tullock v. Worrall, Frederick v. Gray, *supra;* Mehaffy v. Dobbs, 9 Watts 363 ; Lodge v. Patterson, 3 Id. 77 ; Culler v. Motzer, 13 S. & R. 356. As to the estoppel they cited Kirkpatrick v. Black, 10 Watts 329 ; Eply v. Witherow, 7 Id. 168 ; McCormick v. McMurtrie, 4 Id. 194 ; McKelvey v. Truby, 4 W. & S. 323 ; Maple v. Kussart, 3 P. F. Smith 348. There was no intention to violate the Statute of Frauds. If the land had been in fact unappropriated, William would have obtained a good *legal* title from the *Commonwealth :* Myers v. Myers, 1 Casey 100. He may therefore rebut the plaintiff's equity, if he had one : Bonner v. Campbell, 12 Wright 286. In fact the father had but a mere naked possession : Zubler v. Schrack, 10 Wright 67 ; Hughes v. Pickering, 2 Harris 297.

The opinion of the court was delivered, January 4th 1869, by
SHARSWOOD, J.—The 1st error assigned is to the charge of the learned judge below on the question of ouster. The plaintiff in error complains that the question of fact involved was entirely taken from the jury. The court said : " The making a sale or a will giving his estate to his children as was done in this case, the will being witnessed by George Miller (the co-tenant and plaintiff), would be a decisive, open, unequivocal act." At the same time that they gave this instruction, they said in affirming the plaintiff's 4th point " that in order to constitute an ouster of tenants in common or copartners, there must be something more than the mere continuance of possession or perception of profits and payment of taxes ; viz., there must be such acts as denying the right of his co-tenants or other unequivocal acts resisting and setting at defiance his co-tenants or copartners."

Taking the whole together, the instruction was that the making of a will such as that given in evidence was such an act. This will gave directions that his farm should be rented out, and its proceeds applied to the benefit of his family until his youngest daughter became eighteen years of age, and then his real estate was to be equally divided by metes and bounds, quantity and quality among his children. It was clearly inconsistent with a

devise of an undivided interest. In Culler *v.* Motzer, 13 S. & R. 356, it was held that a sale by one tenant in common of the whole tract is an ouster. In Lodge *v.* Patterson, 3 Watts 74, the defendant, immediately after the death of his brother and co-tenant, put up his interest at public sale, bought it in and then had a survey made in his own name. In Dikeman *v.* Parrish, 6 Barr 226, leasing, devising and conveying lands are mentioned as the highest acts of dominion over the property. The uncontradicted evidence in this case showed that the co-tenant and plaintiff was a subscribing witness to the will, and according to the testimony of Elizabeth Miller the will was read in his presence. There could not have been a more open and unequivocal claim of an adverse title to the whole tract, and if the jury believed the evidence they were bound to find an ouster. Upon a fair construction of the whole charge, this is what the court instructed the jury.

The 2d error assigned is to the answers to the defendant's 1st and 2d points. The substance of them was, that if the jury believed that the facts alleged and set forth in them were sustained and made out by the evidence the Statute of Frauds formed no objection to the defendant's title. These facts were : that Jacob Miller, the father of the plaintiff and grandfather of the defendant, had settled on a tract of patented land ; that, becoming old and infirm, he agreed with his son William Miller that if he would support him and his wife as long as they lived he should have the land ; that to obtain a title William should apply for and take out a warrant in his own name, and procure thereon a survey and patent ; that William accordingly procured a warrant, caused a survey to be made and paid the greater part of the purchase-money to the Commonwealth ; that he built a dwelling-house, stable, barn and other improvements, and that he fully performed his agreement in supporting his father and mother during their lives. Now if Jacob Miller had been a settler on unappropriated land, and William had been an entire stranger, and had obtained a title from the state, and gone on and made improvements with the assent and encouragement of Jacob, can it be doubted that he would have been estopped ? When a man encourages another to settle on land and to go on and expend money and labor, he shall not afterwards take the land from the improver though he has an older and better title even though he was ignorant of his rights. To that effect are the cases of McCormick *v.* McMurtrie, 4 Watts 195, McKelvey *v.* Truby, 4 W. & S. 323. This is a stronger case, for there was evidence here of an express agreement ; it was not mere assent and encouragement. Jacob Miller had no settlement right ; he had no title, but bare possession ; good indeed against all the world but the grantees of the Commonwealth. This possession was all that he agreed to give his son, it was all he had to give—that he might procure a

title from the state; both parties evidently supposing that such a title would be available. On the faith of this agreement William went on and fulfilled his contract—took out the warrant and expended money and labor in improvements. If these facts were so, the jury were bound to find that Jacob Miller, the father, would be estopped from controverting William's title or setting up an outstanding title in the prior patentees; and of course his heirs claiming in privity from him are subject to the same equitable disability.

Judgment affirmed.