## Miller's Appeal.　　Ferguson's Estate.

1. Where an owner of land in ignorance of his title thereto, by a positive act induces a party to purchase said land from a third person, and the transaction on the part of all concerned is in good faith, he cannot afterwards, when he discovers his true title, set it up against the purchaser.

2. Where an executor with power to sell under a will by mistake sells certain land, the owner of which in ignorance of his right suffers the executor to make the sale and acts in a manner to work an estoppel, the proceeds of the sale belong to the owner and the executor cannot, as such, be charged therewith in his account.

May 26th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Cumberland county:* Of May Term 1877, No. 210.

| | |
|---|---|
| 84 | 391 |
| 126 | 373 |
| 84 | 391 |
| 136 | 236 |
| 136 | 601 |
| 84 | 391 |
| 147 | 130 |
| 147 | 557 |
| 84 | 391 |
| 194 | 647 |
| 84 | 391 |
| 211 | ²340 |
| 211 | ²494 |
| 84 | 391 |
| f221 | ²575 |
| f221 | ¹576 |

[Miller's Appeal.]

Appeal of James D. Miller, executor of David Ferguson, deceased, from the decree of the court confirming the report of the auditor, to whom had been referred the account of said executor. From the facts found by the auditor, F. E. Beltzhoover, it appeared that David Ferguson, who died in August 1872, was in his lifetime seised in severalty of a small tract of mountain land, and that he and his wife, Mary, were seised in entirety of a farm consisting of about 54 acres. He left surviving him his wife and three children and by his will gave his estate to his wife during life and after, her death to his children. James D. Miller, his son-in-law, was made executor and clothed with power to sell the real estate. In 1873 the widow and the executor contracted to sell and convey the two tracts of land to Daniel V. Ahl. Believing that the estate of David Ferguson still owned one-half the land which had been held jointly by the deceased and his wife, and ignorant of the fact that the wife was entitled to the whole tract by reason of survivorship, and acting under the advice of a county justice of the peace, the executor and the widow executed separate deeds, prepared by said justice, the deed of the widow conveying to Ahl an individual half in the farm for $952, and the deed of the executor conveying to him the mountain land and the other individual half for $1048, the mountain land being valued at $88.

The widow died in April 1875 and by her will gave all of her estate to James D. Miller and his wife. When Miller was about to file his account he was for the first time advised that the joint estate of the testator and wife, survived by the husband's death to the wife and that the whole proceeds of the sale of the farm belonged to the wife's estate. He accordingly filed an account in which he charged himself only with the assets of the estate of David Ferguson and did not include the proceeds of the sale of the undivided interest in the farm.

Two of the children and devisees of David Ferguson contended that the executor ought to be surcharged with these proceeds, and the auditor, while he admitted that the wife became seised of the whole tract as the survivor of her husband, nevertheless, reported that he should be surcharged with the consideration money he received as executor of David Ferguson on two grounds, first, because he received, held and invested this money as executor, and was bound to account to the heirs for it and could not of his own motion determine that this money which he received in his official capacity as the executor of one person should be handed over to the estate of another, and, second, that the wife could certainly refuse to take more than half of the land, and could assent to the conveyance of the other half by her husband before his death or by his legal representative afterwards ; that the husband died in 1872 leaving a will directing that all his real estate should be enjoyed by his wife during life, and at her death go to his heirs, and that he certainly believed he owned

[Miller's Appeal.]

one-half of the farm; that on the 11th of March 1873, the widow made her will wherein she gave Miller her estate; that three days after, on the 14th of March 1873, she made the deed to Ahl; that she lived until 1875, and during that time made no claim for the money in the executor's hands and that from these acts and her conduct it was manifest the widow intended that an undivided one-half only in the farm should pass by her will, and that, therefore, those who claimed through the wife were estopped from coming in upon these proceeds.

The exceptions filed to this report were dismissed and the report confirmed, from which decree this appeal was taken.

*A. B. Sharpe* and *Lemuel Todd*, for appellant.—The doctrine of estoppel does not apply to this case. If the contest were between Ahl and the executor and widow, or any one claiming under them against the purchaser, the doctrine might be invoked. The fact that Mrs. Ferguson was a party to the sale, and in ignorance of her own title, conveyed but an undivided moiety, and acquiesced in the conveyance by the executor of the other moiety would, doubtless, estop her and any one claiming through her, from contesting the title of the purchaser. But as between the two classes of legatees, the doctrine has no place. As the case stands, Mrs. Ferguson's estate is taken from her legatees and given to the legatees of her husband, and the will of the latter substituted for that of the former.

The court has jurisdiction still over the estates and the accounts of the executor and the fund is undistributed and they can apply the remedy. The executor should not be surcharged with moneys not belonging to his testator and this land was no part of the latter's estate. The unauthorized sale by the executor could not change the ownership: Heacock *v.* Fly, 2 Harris 540, 542, 543; Story's Eq. Jurisprudence, vol. 1, sect. 115 and note 2 and sect. 118; Gross *v.* Leber, 11 Wright 520–526; Hunt *v.* Rousmaniere's Adm., 1 Peters 13–17; Same *v.* Same, 8 Wheat. 211; Champlin *v.* Laytin, 18 Wend. 407, 408; City of Philadelphia *v.* Cooke, 6 Casey 59; Ege *v.* Sidle, 3 Barr 115; Carson *v.* McFarland, 2 Rawle 118; Edgar *v.* Shields, 1 Grant 363.

*William Trickett* and *W. F. Sadler*, for appellees.—Ahl knew by his deed what he was purchasing. If he was ignorant of the legal effect of Ferguson's death as to the title, his ignorance of the law will not avail him, and he cannot recover back the money from Miller: Savings Institution *v.* Linder, 24 P. F. Smith 371. Mary Ferguson's estate cannot claim the fund, for she conveyed only the one undivided half, and did nothing to estop herself or heirs from claiming the other half, and they may recover from Ahl in ejectment. The truth concerning the title was open to Ahl as well as

to Mary Ferguson, and when both have the means of knowledge there can be no estoppel: Commonwealth *v.* Moltz, 10 Barr 531; Hill *v.* Epley, 7 Casey 331.

When the truth appears by the same deed or record, which would otherwise work an estoppel, the adverse party is not concluded from taking advantage of the truth: Sinclair *v.* Jackson, 8 Cowen 586; Warren *v.* Leland, 2 Barb. 621; Co. Lit. 352–3. The utmost that can be made out of the evidence is that Mary A. Ferguson was silent concerning her title. But silence will estop only when it is fraudulent: Robinson *v.* Justice *et al.*, 2 P. & W. 23; Hill *v.* Epley, 7 Casey 334; Lawrence *v.* Luhr, 15 P. F. Smith 241. There is no attempt to show any misrepresentation by Mary Ferguson, nor any inducement offered by her to Ahl to purchase the undivided half from Miller. In such case she, as the legal owner of the title to the undivided half which she did not convey, is not estopped from asserting it against another who has spent money to acquire it under a misapprehension of the law: Tyson *v.* Passmore, 2 Barr 125; Good *v.* Herr, 7 W. & S. 257; Peters *v.* Florence, 2 Wright 198. But even misrepresentations of the law, honestly made, do not estop the maker of them from asserting his title: Dungan, Trustee, *v.* American Life Insurance Company, 2 P. F. Smith 257; Lewis *v.* Jones, 4 B. & C. 509.

The title of Mary Ferguson to the one half did not therefore pass to Ahl by estoppel, and it passed to her legatees. They are not therefore entitled to money which the executor of David Ferguson obtained. The purchase-money in the hands of the executor was not the price of their property, but that of a supposititious property of David Ferguson, and his estate was entitled thereto.

Chief Justice AGNEW delivered the opinion of the court, June 18th 1877.

From the report of the auditor we gather the following facts clearly stated though not found in a very orderly connection. David Ferguson, the testator, and his wife Mary A. Ferguson, were seised by a common conveyance of a tract of land in entirety, *per my et per tout*, which according to law at his death survived to her. David Ferguson made his will devising and bequeathing all his real and personal estate to his wife during life, and at her death to Mary Miller, Margaret Germon and Sarah Miller, and appointed James D. Miller the appellant executor, with power to sell and convey his real estate, and the auditor says he certainly believed he owned one half of the farm. Miller, his executor, and Mrs. Ferguson, acting upon this belief, "on the same day and at the same time" conveyed this tract of land to Daniel V. Ahl, who paid to each the sum of $952, as the price of the supposed undivided half coming to each, the scrivener, John Zinn, certifying that when the sale was made, *he* made each deed for the one undi-

[Miller's Appeal.]

vided half because he considered the place belonged to both parties. The auditor says that "the executor of David Ferguson (Miller) believed he had the right to convey one-half of the farm and the widow also believed so and assented, and the conveyance was honestly made to Daniel V. Ahl, and he paid the money." Now these facts, the deeds being made as the auditor finds on the same day and at the same time, and with the assent of Mrs. Ferguson, and thus accepted by Ahl, who paid his money on the faith of the joint acts of the executor and the widow, prove conclusively, that Mrs. Ferguson led Ahl to believe that the title stood in the way the deeds indicated, and acting on this belief he paid one-half of the purchase-money to the executor. Such being the case Mrs. Ferguson would clearly be estopped from recovering the land from Ahl. It is a case not of mere silence by one ignorant of her rights, but one where the positive act of Mrs. Ferguson in uniting with the executor to make the sale, misled. "True (says GIBSON, C. J.), the title of a party who ignorantly encourages another to purchase will be postponed; not, however, for fraud, but for having occasioned a loss which must be borne by some one, and consequently by the author of it:" Paul v. Squibb, 2 Jones 290. So HUSTON, J., says: "There is another rule equally well settled, where at the time of a sale the seller or *any person present* represents the title to be in a certain way, and it turns out not to be so, yet as against the person making the representation it shall be as represented:" 2 Penna. 277. In Buchanan v. Moore, 13 S. & R. 306, it is said by GIBSON, J., "If both were equally innocent a loss in consequence of the acts or declarations of the one ought not to be borne by the other." The same doctrine is asserted in Lewis v. Carstairs, 5 W. & S. 209. The doctrine of estoppel is largely discussed by BELL, J., in Commonwealth v. Moltz, 10 Barr 527, wherein he states it as an established principle "that in all cases where an act is done or a statement made by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel shall be given to it." See also McKelvey v. Truby, 4 W. & S. 325. Without further citation the doctrine of estoppel by acts or declarations is well summed up by Justice WOODWARD in Beaupland v. McKean, 4 Casey 131. He says "The rule is clear that mere silence will postpone only when silence was a fraud; and a fraudulent concealment of title cannot be imputed to one who was ignorant that he had any title to conceal, but *positive acts* stand on a different ground. For there his title may be postponed even without fraud, in accordance with an equitable principle of universal application, that where a loss must necessarily fall on one of two innocent persons it shall be borne by him whose act occasioned it." Now, it is clear that when Daniel Ahl *honestly* purchased as the auditor finds, from Mrs. Ferguson at the same time and place, with

the executor of her husband, and each made a deed for the undivided half, she did an act which was declaratory of her husband's title stronger than mere words; and when Ahl paid the money for her husband's half with her assent, as the auditor finds, he did an act of decided injury to himself under the influence of her conduct, which must cause him a loss of $952, if she or her heirs are permitted to recover the land from him. Nor is the conclusion weakened by the doctrine of *caveat emptor*, or that ignorance of the law excuses no one. *Caveat emptor* carried to this length would destroy all estoppels, for generally the purchaser may always know the truth of his title if he tries, but it is because he is misled he does not try to ascertain it. Ahl, if he had not been misled by the conduct of Mrs. Ferguson and the executor, might have found out the nature of her title, but there is no evidence he was aware of it. Husband and wife may hold as tenants in common by separate deeds, or by the precise terms of a conveyance as such. The legal effect of ignorance of the law cannot deprive him of the attitude of one *actually* misled by the conduct and representations of Mrs. Ferguson. Ignorance of the law, in its effect, cannot operate without a knowledge of the facts on which the law arises, and his very reliance on the acts and representations of Mrs. Ferguson and the executor took from him an opportunity of knowledge, and it does not lie in their mouths to reproach him with ignorance of the law, or the maxim *caveat emptor*. Ahl, therefore, can hold the land, and the next question is can the executor withhold the money from Mrs. Ferguson or, since her death, from her executor? Clearly not. Here the principle of estoppel which protected Ahl cannot be resorted to by the executor. He is not injured; he has paid nothing and lost nothing, but he has actually received that which Mrs. Ferguson suffered him to receive in ignorance of her rights. He and she rested on the same deed for title and so far as ignorance of the law is involved both stand on the same footing and neither can assert the knowledge of the title to be greater in one than in the other. This position is well stated by C. J. GIBSON in Paul *v.* Squibb, *supra*, a case of precisely similar character, where husband and wife held an estate of entirety as in this case and the husband's supposed interest was sold at Orphans' Court sale. "Constructive knowledge (said he) of an undisclosed right is not enough to charge the party with concealment." Again, "She assented to a sale of her husband's title, not her own; and the title she had was founded on a recondite principle of common law, which even a learned conveyancer might overlook. Every one is presumed to know the law; but the presumption is not strained so far as to charge him with an act of immorality, especially when the complainant had the same means of knowledge and was equally implicated. She was not bound therefore to protest against the sale at her peril." Now, here no consideration

[Miller's Appeal.]

passed from the executor to the widow, no injury accrued to him or the estate in his hands; both had equal opportunities of knowledge, and both were equally innocent, while both were misled by the act of the testator, who directed his real estate to be sold, and as the auditor finds, believed himself to be the owner of the undivided half of this estate. It is clear, therefore, that the executor received money belonging to Mrs. Ferguson, which she was not estopped from recovering, and which, therefore, he is bound to refund.

Now what have the auditor and court below done in this case? They have surcharged him, as the executor of the husband, with the money of the wife, and from this decree he has appealed. Clearly he is entitled to be discharged of it, and the more especially as, being the executor of the wife also, he will be held to account to her estate for it. The husband's estate is not entitled to the price of the wife's land, and therefore the executor should not be charged with it. The wife's estate is entitled to it, and therefore a decree should not stand which may lead to charging him twice with this money.

> Decree of the Orphans' Court is reversed, and the charge in the executor's account of the sum of $952, the price of the undivided one half of the land owned by Mrs. Ferguson, is ordered to be struck out of his account; but as the executor, James D. Miller, has caused these proceedings by his own acts, he is ordered to pay the costs of the audit and of this appeal; and the record is ordered to be remitted; to carry this decree into effect.