## Newman *et al. versus* Edwards.

This court will not reverse because of an omission, at the trial, to instruct
the jury on a material point in the cause, if the attention of the court below
were not called to it by the parties.

The acts of a party done in ignorance of his rights, will not operate as an
estoppel, unless others have acquired rights on the faith of them.

ERROR to the Common Pleas of *Fulton county.*

This was an ejectment by James Edwards against Philip New-
man and George Newman, for a tract of land in Dublin township,
Bedford county.

The title of the plaintiff commenced with a warrant to William
Harrison for 400 acres, dated 14th November 1794 ; on which a
survey was made on the 16th October 1795, of 419 acres 127
perches.    This, and an adjoining tract, in the name of John
Phillips, were sold by the treasurer of Bedford county, for unpaid
taxes, in June 1830, and purchased by James O'Connor, to whom
a deed was executed on the 23d August in the same year.

[Newman *et al. v.* Edwards.]

On the 15th July 1839, O'Connor conveyed a part of the William Harrison survey to Michael Barndollar; who, on the 7th September 1846, conveyed to Ephraim Yingling; and in January 1855, Yingling conveyed the same to the plaintiff.

The defendants' title to 26 acres of the land in dispute was founded on a warrant to George Newman, dated the 1st June 1849, and a survey thereon upon the 9th of the same month.   The residue was claimed as part of an old improvement in the name of Robert Cluggage, upon which one Abner Barnet entered in 1812, and continued to reside until his death in 1834.   By his will he devised his real estate to his son Abner Barnet, Jr., and his two daughters Hannah and Mary.

On the 18th March 1840, Abner Barnet, Jr., procured a warrant based on this improvement, and had a survey made, on the 4th June 1840, for 306 acres 83 perches, which was duly returned. The devisees of Abner Barnet continued in possession, until they sold to the defendants, who immediately went into possession and continued to reside upon the land.

The main question in the cause was whether the survey in the name of William Harrison covered the land in dispute; and in this court, the plaintiffs in error contended that if the land in dispute was included in the Harrison survey, the owners of it were estopped from gainsaying the title of the defendants below.

James O'Connor was a surveyor, and surveyed the Harrison and Phillips tracts whilst he was the owner of them.   There was evidence that he had pointed out a certain hickory corner (now gone) as the boundary of the Harrison survey; and a spruce corner as the boundary of the Phillips survey.   And in November 1830, he made a survey, for Abner Barnet, of the Cluggage improvement, which adjoined the Phillips and Harrison surveys on the south.   He ran and marked the lines upon the ground, and gave Barnet a draft, according to which the land in dispute was outside of the Harrison survey.   The survey made for Abner Barnet, Jr., on the 4th June 1840, included the same land as that made by O'Connor for his father, in 1830, and adopted the same east and west line as the boundary between that improvement and the Phillips and Harrison surveys.

After O'Connor had sold to Barndollar, a controversy arose between the latter and Isaac Baker and John Star, who had purchased a part of the Phillips tract, which resulted, in 1841, in an action of trespass *quare clausum fregit*, by Barndollar against Baker and Star; the case was referred, and on the 18th November 1842, whilst pending before arbitrators, an agreement was entered by O'Connor acting for Baker and Star and Michael Barndollar, by which, amongst other things, it was agreed, " that the line running east, adjoining Barnet, is confirmed."   This agreement was executed by O'Connor without authority from his constituents,

[Newman *et al. v.* Edwards.]

and the award based on it was set aside by the court. Evidence was given by the plaintiff tending to prove that the line mentioned in that agreement was the one claimed by him, and not the one claimed by the defendants. The two lines are parallel to each other.

The defendants' counsel presented the following points in writing, upon which they requested the court to charge the jury:—

1. That if the jury believe that the hickory corner pointed out by Stephens, Wolf, Nead, and others, was declared by James O'Connor to be the corner of the William Harrison survey, whilst he was the owner of said survey, it is their duty to regard that hickory as a boundary of the survey; and especially so, if the other evidence in the case should render the location of that survey doubtful.

2. That if the jury believe that the spruce was pointed out by James O'Connor as the corner of the John Phillips, whilst he was the owner of that tract, it is their duty to take the spruce as an established corner of the Phillips survey.

3. That the survey of the Abner Barnet tract of land made by James O'Connor, whilst he was the owner of the Phillips and Harrison surveys, is conclusive evidence that there is no interference between the Abner Barnet survey and the surveys of Phillips and Harrison.

4. That the agreement between O'Connor and Barndollar, establishing the line between the Barnet and the Phillips and Harrison surveys, concludes Barndollar and all persons claiming under him from claiming beyond, or over said line.

In answer to these points, the court below (KIMMELL, P. J.) instructed the jury as follows:—" The declarations and acts of James O'Connor, made and done when he was the owner of the land, are evidence on the question of location, and you will so consider them; but they are not conclusive evidence on the point, unless you are satisfied that he was acquainted with the true boundaries of the tracts, and acted on that knowledge when he spoke of the spruce as a corner of the Phillips, and the schoolhouse hickory and other trees as corners of the Harrison; and made the survey of 1830, and the agreement at the arbitration, with the same knowledge. If he acted in ignorance of his rights, when he made the admissions and did the acts spoken of, then this plaintiff is not bound by them. The plaintiff is not to be affected any more by the declarations and acts of O'Connor, made ignorantly, than the defendants are bound by the admissions made by Barnet to Vickroy, when he declared the land vacant, if he also was acting in ignorance of his rights at the time."

To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff, they removed the cause to this court, and here assigned the same for error.

[Newman et al. v. Edwards.]

*King & Jordan*, for the plaintiffs in error.—The owners of the Harrison survey are estopped by the. acts and declarations of O'Connor, from contesting the boundary line pointed out by him. It was after these acts and declarations of O'Connor that Barnet and his successors in the possession made improvements upon the land, took out a warrant, and had a survey made and returned, adopting the division line established by him; and the law will presume the expenditures were incurred on the faith of such acts and declarations. It is not necessary there should be positive proof that the expenditures were incurred on the credit of the acts and declarations; it is enough that-there is a possibility of it, to raise an equitable estoppel by operation of law: Lewis *v.* Carstairs, 5 *W. & S.* 209; Crowell *v.* Meconkey, 5 *Barr* 176; McKelvey *v.* Truby, 4 *W. & S.* 323; Robinson *v.* Justice, 2 *Penn. R.* 23.

*Cessna*, for the defendant in error.—No question of estoppel was raised in the court below.

The opinion of the court was delivered by

THOMPSON, J.—All we can deal with in this case are the alleged errors in the charge of the court.. We are not warranted in transcending this limit, to discuss the question of original location, or whether those claiming under the title of O'Connor are estopped by his acts *in pais* or not. The points put to the court do not raise that question. It is raised here, but we cannot test the accuracy of the court below by what did not occur there, or by any alleged omission, unless it occurred after attention was called to it by the party injured. It is not error in a judge to omit to charge on a point, although material, if he is not requested to do so. We can only presume, that the point was not thought to be material, or it would have been made.

It is certainly true, that a party may be estopped by acts or declarations made even in mistake of his rights, if by them others have been led to the expenditure of money, or to make improvements on their faith: 5 *Barr* 176; 4 *W. & S.* 323; 2 *Penn. R.* 23; 5 *W. & S.* 209. But all the points called for instructions upon the conclusiveness of the acts and declarations of O'Connor, by way of estoppel, without regard to anything but their own inherent force, and without alleging injury to supervening rights acquired on the faith of them. The court very properly instructed the jury, that these acts and declarations were evidence on the question of location or boundary, and referred them to their consideration. The learned judge also very properly instructed, that if O'Connor " acted in ignorance of his rights when he made the admissions and did the acts spoken of, then this plaintiff is not bound." Nothing could be truer than this, in the absence of injury to supervening rights resting on them. We

[Newman *et al. v.* Edwards.]

think, too, that the court substantially responded to all the points propounded by the plaintiff in error—and this disposes of the several assignments of error in the case.

Judgment affirmed.