Boyles *against* Johnston's Executors.

IN ERROR.

1813.

*Pittsburg,*
*Saturday,*
September 18.

THIS was an ejectment in the Common Pleas of *Indiana,* for 213¼ acres, which the executors of *Johnston,* the plaintiffs below, claimed under a warrant of the 8th *December* 1774, in favour of *Stephen Porter,* for 200 acres on *Stoney Run.* On this warrant a survey was made on the 24th *November* 1775 by *Joshua Elder,* deputy surveyor, for 213¼ acres. On the 1st *March* 1782, *Porter* conveyed to *Robert Johnston* the testator, who obtained a patent from the Commonwealth.

The defendant claimed under an application dated the 3d *April* 1769, and signed by *John Pomeroy* in the name of *John Stephenson,* for 300 acres of land on the north side of *Black-lick* about two miles from the fording, which he produced, together with a copy of the location for the land, in *Stephenson's* name. No survey of this tract was ever returned to the land office; but the defendant proved that in the year 1772, a cabin was built upon the land in dispute by one *Robert Reed,* and about five or six acres of land deadened; that *Pomeroy* bought the improvement of *Reed,* and placed one *Milligan* upon the land, who improved it for him in the years 1775 and 1776; and that *Pomeroy* in his life time had receipts for the surveying fees paid to *Joshua Elder,* which had been lost, and had requested *Thomas Allison* about 20 years before the trial, to procure a tenant for the land. In order to prove a survey of the land in dispute for *Pomeroy,* under the above location, the defendant's counsel then offered in evidence, successively, the following papers: 1. A manuscript book containing the field notes of *Joshua Elder,* deposited in the office of the deputy surveyor of the district, and remaining there, by which it appeared that this land was surveyed for *Pomeroy* on the 22d *April* 1773. 2. A warrant in the name of *Samuel Moorehead,* dated the 24th *June* 1785, calling for *John Pomeroy's* land as adjoining. 3. An old draught of a survey found in the office of the deputy surveyor, on which the name of *John Pomeroy* was endorsed in the hand writing of *Joshua Elder,* and on which the

The field notes of a deputy surveyor, shewing a survey for *A* at a particular time;— a warrant in the name of *B,* calling for *A* as adjoining,—an old draught of a survey found in the office of the deputy surveyor, on which *A*'s name was indorsed in the hand writing of the deputy surveyor,—all these papers admissible in evidence to shew a survey for *A.*

1813.

BOYLES
*v.*
JOHNSTON'S
Executors.

name of *Stephen Porter* was also endorsed under the name of *Pomeroy.* The Court rejected them all, and sealed a bill of exceptions.

*Kelly* and *Reed* for the plaintiff in error, relied on *Hubly's Lessee* v. *Chew* (*a*), and *Sproul* v. *Plumsted's Lessee* (*b*).

*Forward,* contra.

TILGHMAN C. J. after stating the facts, proceeded as follows:

If this land was actually surveyed for *Pomeroy,* and improperly returned by the deputy surveyor on *Porter's* warrant, and if *Pomeroy* had taken possession, insisted on his title, and never relinquished it, then there would have been an outstanding title which would have barred the plaintiff's recovery, even though the title of the defendant had not been connected with that of *Pomeroy.* Whether it was so connected, does not appear by the bill of exceptions, and therefore we cannot suppose that it was. If as the defendants' counsel now say, the connection was proved, it ought to have been inserted in the bill. The papers rejected by the Court seem to have been material for the establishment of *Pomeroy's* title. Such papers have been received in similar cases. The field notes of the deputy surveyor were admitted in *Hubly's Lessee* v. *Chew,* 2 *Sm. Laws* 257; and it is evident that the old draught endorsed *John Pomeroy,* must have been very material to shew that the survey was originally made for *Pomeroy.* Such a draught was given in evidence *without dispute,* in the case of *Ross's Lessee* v. *Patterson,* tried before the late Chief Justice *Shippen* and Judge *Brackenridge* at a Circuit Court for *Lycoming* county, in which I was of counsel for *Patterson.* In that case the name of *Patterson* had been endorsed, then obliterated, and the name of another person inserted in the place of it. The warrant calling for the land of *Pomeroy,* also tended to shew that a survey had been made for him. By rejecting these papers, the Court took upon themselves to decide matters which ought to have been submitted to the jury. Whether the location was the property of *Pomeroy,* and supposing it

(*a*) 4 *Smith's Laws* 257.        (*b*) 4 *Binn.* 192.

to be his property, whether he had acted so negligently as to forfeit the imperfect title which he had acquired, were matters which depended on a variety of circumstances, concerning which the Court might have given their opinion to the jury after the evidence was closed. But it appears to me, that agreeably to former decisions, the evidence ought to have been received. I am therefore of opinion that the judgment should be reversed, and a new trial ordered.

YEATES J. absent in consequence of sickness.

BRACKENRIDGE J. was of the same opinion with the Chief Justice.

Judgment reversed.