The opinion of the court was delivered by
Tilghman, C. J.
The defendants in error, were plaintiffs below, and claimed under alocation of the 3d April, 1769, No. 158, in the name of Benjamin Brown, for 300 acres of land, on the north side of Bald Eagle Creek, &c. The defendants claimed under two locations of the 3d April, 1679; one of them, No 1347, in the name of George Knight, and the other No. 1796, in the name of George Wilson, both the property of Samuel Wallis, from whom the defendants derived their title. On the trial of the cause, the defendants took nine bills of exceptions to evidence. The' 2d and 9th of these exceptions have been abandoned. The other seven have been argued.
*315 1. The plaintiffs alleged, that Charles Lukens, deputy survey- or, had made a survey on Brown’s location, which ought to have been returned for Brown, but that it was improperly returned for Samuel Wallis. And to prove this, they offered in evidence, a draft found among the official papers in the office of the deputy surveyor of the district. This draft was not signed by any officer, nor returned to the surveyor general, neither did it purport to have be^n made for Brown, or any other particular person; but it was proved to be the hand writing of either Jesse or Charles Lu-kens, both of whom were deputy surveyors. The defendants objected to this evidence, but the court admitted it. No doubt, this draft was evidence. If the survey was made for Brown, he would have title to the land, though the return was made for Wallis. Now a draft made by the deputy surveyor was certainly some evidence, although it might not be sufficient for the plaintiffs’ purpose, unless corroborated by circumstances. Such cases have occurred before, and such evidence has always been admitted. In the Lessee of Adams v. Goodlander, &c. 2 Yeates, 313, it was decided, that papers found in the office of the deputy surveyor, in his handwriting, were evidence, to impeach his return of the survey. In Bayles, in error, v. Johnson’s Executors, 6 Binn. 125, papers were admitted in evidence, which had been found in the office of the deputy surveyor, and had a tendency to show that a survey had been made for one person and not returned, and afterwards the same land had been surveyed and returned for another. The same principle was recognized, in Hubley v. White, 2 Yeates, 133, and in Patterson v. Ross, which, I believe, has not been reported.
3. The defendants offered to prove, by David Evans, what was the value of the landin dispute, in the year, 1784; but the court refused the evidence. The decision of the court was right The matter to be tried was, whether the plaintiffs had good title, not whether they had purchased the land below its value. They did not purchase of the defendants, or of any person under whom the defandants claimed. It was nothing to them, therefore, what was the value of the land when the plaintiffs purchased, or at what price they purchased. Evidence of this kind serves but to excite the prejudice of the jury, and leads to a verdict founded on passion, rather than on reason, There was no point of law, or equity,' bearing on the cause, to which the evidence was applicable. It was, therefore, properly rejected.
4. The defendants offered, a deed from Jonathan Walker, one of the plaintiffs, to Thomas Burnside, for his interest in the land in dispute, executed since the commencement of this suit. The plaintiffs objected to the evidence, and the court rejected it. Had it been simply a deed of conveyance of Walker’s part of the land, it would have been evidence; because, after such a conveyance, Walker would not have been entitled to a recovery. But it was not so. It is a deed of a singular nature. After reciting, that *316 Walker was indebted to Philip Benner in the sum of 600 dollars, or thereabouts, and wished to secure the payment of the same as soon as possible, it goes on to the granting part, viz. “he the said Walker did, in consideration of the premises, assign, transfer, and set over, to the said Burnside, all the interest he had in the survey of Benjamin Brown, on which Richard Gómalas resided, upon the special trust, and confidence, to sell and dispose of the same, and to pay the said Brown, the said debt.” The words of conveyance vest no inheritance in Burnside, but it was clearly the intent that he should have power to sell, and convey, in fee simple. It is clear also, that Walker retained an interest in the premises, in case his share of the land should be more than sufficient to pay Benner’s debt. For the surplus, there was a resulting trust for Walker. And if he had borrowed money, and paid Benner’s debt himself, he would have had complete equity, in the whole which he had conveyed to Burnside. It could hardly have been intended, that a sale should be made, pending this suit; for who could be expected to purchase a law suit? It looks more like a mortgage, with power irrevocable to sell, than an absolute conveyance. And if such was its nature, there could be no objection to Walker’s proceeding in this suit, and in case he recovers, retaining the possession until a sale is called for by Benner, or the trustee, Burnside. Indeed, a construction which would prevent a recovery in this action, would serve to defeat the intent of the parties. The case of Goodtitle on the demise of Hart v. Knot, Cowp. 43, may throw some light .on this subject. There was a devise of land, to trustees, for payment of debts and legacies, in case the testator’s personal estate was insufficient. Lord Mans* field, said, “ that it was, in substance, and equity, a devise of a charge on the estate, which may be discharged on payment of the debts and legacies.” In the case before us, if Benner was satisfied, that Walker should proceed in the action, and retain the possession, when recovered, until he {Benner) should call for a sale, the object of the deed would be answered. I am, therefore of opinion, that the defendant cannot set it up, against the will of the parties, in order to defeat the suit; consequently it was not evidence.
5. The next exception was to part of certain proceedings of the board of property, given in evidence by the plaintiffs. On the I5th March, 1771, Benjamin Brown entered a caveat against a survey made for George Frey, on the Bald Eagle Creek, alleging that Frey’s order was not laid on the land intended, but on the land applied for by the said Brown. On the 8th of November, 1788, a certain Benjamin Bioren, appeared before the board, and produced a power of attorney from George Frey, authorizing him to act for him in that case, and Bioren also produced a writing, signed by himself as attorney for Frey, and by Richard Gomalus, by which it was agreed, that the caveat of Brown (under whom *317 Gonzalus claimed,) against Frey, should be withdrawn; that Gonzalus should release to Frey, a certain tract of land particularly described, and that Frey should release to Gonzalus the tract now in dispute, on which the said Gonzalus then lived, and on which the said Brown had made an improvement, which he sold to Gonzalus. The part of these proceedings to which the defendant objected, was that which méntioned the power of attorney from Frey to Bioren, and the releases between Gonzalus and Frey, If these proceedings had been offered in evidence, in order to show, that a power of attorney had actually been given, and releases executed, the objection would have been good, because the proceedings of the board, are not evidence to prove particular facts. But the purpose of their being offered, was only to prove, that both Brown and Gonzalus had been vigilant in presenting their claims. It is to be observed also, that along with these proceedings of the board of property, the plaintiff offered in evidence, the application of George Frey, of the 3d of Jlpril, 1769, with the draft of a survey, to which was attached a rider, in the hand writing of Charles LuJeens, (deputy surveyor,) by which it appeared, that Lukens had, by mistake, given Frey the draft of a survey in the wrong place. In consequence of this mistake, Frey claimed the land now in dispute, which Brown also claimed, as having been surveyed for him; and, therefore, it was, that the caveat was entered by Brown against Frey. Npw, this last evidence, together with the proceedings before the board, would account for Brown’s mistake in supposing that Frey had a survey for the land in dispute; and for Frey’s mistake in thinking, that his survey was actually on that land, until Charles Lukens explained the error which he had committed in giving him the wrong draft. It appears, by the record, that the defendants excepted also to the evidence of the rider, attached to the draft, because it was not certified to be a true copy; but this objection was fully obviated, by the oath of Mr. Potter, who swore, that it was a true copy, compared by himself with the original, in the land office, in the hand writing of Charles Lukens. I am of'opinion, therefore, that the rider was evidence, and also the proceedings of the board of property, for the purpose for which they were offered.
6. The plaintiffs offered in evidence, certain other proceedings of the board of property, viz: a caveat entered, 6th of May, 1783, by Richard Gonzalus against James Packer, for the tract in dispute; an order of the board dated 6th of November, 1788, directing the deputy surveyor to make such surveys as were necessary,to show the pretensions of the parties, and the interferences of their surveys; the decision of the board of property, 4th of May, 1789, by which the caveat of Gonzalus was dismissed; and the deposition of Samuel Wallis, referred to in the said decision, and on' which it appears to have b'een founded. To all this evidence the defendant-objected, but it was admitted by the court. This evidence was of *318 fered, for the same purpose that the other proceedings before the same board were, viz: to show, that Gonzalus had persevered in prosecuting his claim. It was objected, that Packer not being party to this suit, the proceedings between him and Gonzalus, could not be evidence. But there is no weight in this objection; because it was proved, that Packer had claimed the land in dispute, and therefore, it was necesssary for Gonzalus to caveat against him. It was objected also, that the deposition of Samuel Wallis was ex-parte, and therefore, not evidence. A moment’s consideration will be sufficient to show, that it was evidence for the purpose for which it was offered. Both the deposition of Wallis, and the order of the board founded on it, were directly adverse to the title of Gonzalus ; but he offered them both in evidence, to prove, 1st, That he did prosecute his claim before the board of property, and 2d, That although the decision was against him, it ought not to be regarded, because it appeared on its face, to be founded on an ex parte deposition.
7. The plaintiffs offered in evidence the deposition of Daniel Turner, taken under a rule of court, with two drafts annexed to it. Turner swears, that he was an assistant to Joseph J. Wallis, deputy surveyor; that about the year 1792, the said J. J. Wallis requested him to examine the lines of interference, between a tract or two of land of his brother Samuel Wallis, in the name of Wilson, on Bald Eagle, and a certain claim of Benjamin Brown; the said J. J. Wallis informed him, that Richard Gonzalus had obtained an order from the board of property, to have the said interferences examined, and also gave the deponent the copy, or note, of Brown’s draft: “ That the deponent did run the lines of Brown’s draft, and found them on the ground according to the draft — that he blocked the trees, and found them answer exactly to the date of Brown’s survey.” The defendant objected to that part of the deposition • which speaks of running the lines, and blocking the trees, fyc., because the witness does not mention fads, but his own conclusions. I cannot perceive the force of this objection. When a man says, that he ran the lines described in a draft, which is annexed to his deposition, and found them marked on the ground, that surely is a fact; and when he says, he blocked the trees, and found them answer the date of the survey, that is a fact, according to the common understanding of the courts, which is, that a ring appears oh the block for each year. The jury could not mistake his meaning, and if they thought, that there was no truth in the notion of a ring for each year, they would pay no regard to it. An objection ""as also taken to that part of the deposition which speaks of the draft of Brown’s land, because the draft alluded to- was not produced. But this objection was answered, by proof made to the court, that the draft was lost. With this proof the court below was satisfied, aud it must bé a very strong *319 case indeed, to induce a court of error, to say, that the proof on that point was insufficient.
8. The last exception was to a survey, offered in evidence by the plaintiffs, for Griffith Evans, made by Charles Lukens, deputy surveyor, the 20th of July, 1769. The objection is, that this survey was irrelevant, having no connexion with the land in dispute. But this survey included what is now the town of Belle font, which is in the neighbourhood of the land in dispute — it was relevant, therefore, inasmuch as it proved, that Charles Lukens was in that neighbourhood, about the time when the plaintiffs allege he made the survey on Brown's location. It was relevant also, because the defendants had put a question to one of the witnesses, in order to ascertain at what time Charles Lukens had been in that part of the country. _ _ .
_ _ I have gone through all the exceptions, and am of opinion, that none of them have been supported. The judgment is, therefore, to be affirmed.
Judgment affirmed.
Duncan, J. being interested in the cause, gave no opinion.