*Wheeling.*

| 15 171|
| 34 283|

COLLINS *v.* MANN *et al.*

Decided May 10, 1879.

Where the action is by the person against whom the process is-
sued, it is sufficient for *the officer* who served it to prove the pro-
cess itself, if it appears upon its face regular and to have been
issued by a person or officer having authority to do so ; but the
party must justify under a valid judgment.

1879
Special Term.

Writ of error and *supersedeas* to a judgment of the cir-
cuit court of Greenbrier county, rendered on the 25th
day of June, 1877, in an action in said court then pend-
ing, wherein John W. Collins was plaintiff and James
Mann and Tobias Mann were defendants, allowed upon
the petition of said Collins.

Hon. Homer A. Holt, judge of the eighth judicial cir-
cuit, rendered the judgment complained of.

MOORE, JUDGE, furnishes the following statement of
the case :

Collins in August, 1876, instituted, in the circuit
court of Greenbrier county, against Mann and Odell, an
action of trespass for the seizure and conversion of one
bay horse, one bay colt, one saddle, one pair of saddle-
sacks, one bridle, one sack, and one rifle gun, of the
value of $300. The defendants pleaded not guilty ; and the
parties also agreed that any matter might " be given in
evidence that could be given in evidence if specially
pleaded. " The jury, having heard the evidence,

found for the defendants; and thereupon the plaintiff moved the court to set aside the verdict and grant him a new trial, on the ground, First: that the court had allowed improper evidence to go to; the jury. Second: that the court had misled the jury by an erroneous statement of the law in their hearing; Third: the verdict was contrary to the law, and the facts proved. The motion was overruled and judgment given according to the verdict. Thereupon Collins took his bill of exceptions, setting forth the facts proved, and rulings of the court.

## BILL OF EXCEPTIONS.

" Be it remembered that on the trial of this cause the following facts were proved before the jury :

" In the year 1865, the defendant, James Mann, claiming by purchase a tract of land lying in Greenbrier county, sent one Baber with a lot of cattle to be ranged thereon; that when the said Baber arrived on said land with the cattle he found thereon the plaintiff, who claimed to be in the occupancy of said land under authority of one Faulkner, as agent for one Williams, and who said that he wanted the grass for himself; that said Faulkner had no authority to rent said land, and had not authorized said plaintiff to occupy said land, but referred him to said Williams to whom the plaintiff did apply, and to whom the said Williams replied that it was Mann's land, and he, plaintiff, must go to him; that said Baber was thirty miles from the residence of said Mann, and told said Collins that if he would suffer the cattle to be ranged on said land and would take care of them that said Mann would pay him for taking care of them so much as it might be worth; that in the fall of that year said Mann sent Baber to bring said cattle into the settlements, and said Baber gathered up for that purpose all of said cattle except nine, which said Collins told him he knew the whereabouts of, but intended to keep until Mann should pay him for taking care of the lot; that said Baber told said Collins that if he would come in

1879
Special Term.

Collins
v.
Mann *et al.*

with the cattle said Mann would pay him for looking after the cattle, which said Collins declined to do, and declared that he intended to keep said cattle; that said Mann then applied to John W. Arbuckle, as mayor of the town of Lewisburg, to know what to do in the matter; that said Arbuckle told him that he could issue a writ which would enable him to get them, that the said Arbuckle then issued a summons, which is in the words and figures following, to-wit:

"STATE OF WEST VIRGINIA,
    "*Greenbrier County, to-wit:*

"To JOHN COFFMAN, *Special Constable of said County*:

"You are hereby commanded in the name of the State of West Virginia to summon John W. Collins to appear before me at my office in the town of Lewisburg, in the said county of Greenbrier, on the 24th day of December, 1875, at 10 o'clock A. M., to answer an action of James Mann against him for the recovery of the possession of one small, dark brindle steer, three years old, of the value of $20.00; one white steer with red about the head, two years old, of the value of $22.00; one deep red steer, two years old, marked with a scald or wart across the loins, of the value of $20.00; one yellow and and white spotted steer, two years old, of the value of $30.00; one small heifer, crumple horned, two years old, of the value of $15.00; one small roan yearling heifer of the value of $12.50; one white yearling steer of the value of $18.00; one dark brindle heifer, three years old, of the value of $18.00; one pale red steer, two years old, of the value of $22.00, and fifty dollars damage for the retention thereof; the said cattle branded with the letter O on left thigh of each, except the yellow and white spotted steer. but said brands do not now show plainly. The said James Mann, having filed an affidavit and bond conditioned to pay all costs and damages which may be awarded against him or sustained by any person by reason of said suit, you are hereby commanded and

directed to seize and take into yuor possession forthwith the property mentioned in this summons.

"Given under my hand this 13th day of December, 1875.

"J. W. ARBUCKLE, *Mayor.*

But told said Mann that his jurisdiction did not exceed the amount of $100.00. Whereupon said Mann told him that he released all claim to any excess above $100.00; that the said summons was delivered to one Coffman who was deputed by said mayor as a special constable to execute the same; that said Coffman was authorized by said Mann to pay said Collins for taking care of said cattle; that said Coffman, upon going to where these cattle had been kept, found that said Collins had moved with them into the county of Nicholas, near the Greenbrier line; that he went into said county, found said Collins and offered him one dollar per head for the entire lot for keeping said cattle, which said Collins refused to accept; that said Collins refused to give up said cattle which were kept by him, although demand was made for them by said Coffman; that on the following day said Coffman went to the place in Nicholas county where said Collins was then residing, and not finding said Collins at home, gave to the wife of said Collins a copy of said summons, which he had made in pencil, and explained the purport thereof to her, and that he then took seven of said cattle, which were all that he could find, and started with them to said Mann's residence, but was pursued by said Collins who took said cattle from him; and there was evidence tending to show that said Coffman then and there, and in said county of Nicholas, read said summons to said Collins and made return of said summons in the words and figures following, to-wit:

"RETURN.—*Sarved By leavin* a *coppy* of his summons with John W. Collins on the 21st day of December, 1875, *i tackin* the *Catll* and he *Com* up *arned,* and took the Cattle.      "JOHN COFFMAN.

"Subscribed and sworn to before me this 24th day of December, 1875.

"J. W. ARBUCKLE, *Mayor.*

" And the following entry from the record-book of the mayor of the town of Lewisburg was read in evidence, which is in these words and figures:

"JAMES MANN ⎫
    *vs.*     ⎬
JOHN W. COLLINS. ⎭

"DECEMBER 24, 1875.

" Process returned executed; defendant failed to appear; judgment rendered for the plaintiff, and it is therefore, considered that he recover the possession of the cattle as mentioned in the summons, from the defendant, John W. Collins, if a recovory thereof can be had, and if not, that he recover one hundred dollars, the value of said cattle, and the costs of this suit, which costs now amounts to $2.55.

"J. W. ARBUCKLE, *Mayor.*

"A copy. Teste:
    " J. W. ARBUCKLE.

" And it was proved that a transcript of said judgment of said mayor, duly certified by him, was by direction of said Mann, filed in the clerk's office of the county-court of Greenbrier county, and duly entered on the execution docket of said office; that he applied to said clerk for an execution thereon directed to the sheriff of Nicholas county, and that said clerk issued an execution thereon, which is in the words and figures following, to-wit:" (As the execution is given in full in the opinion it need not be recited here.) "And placed the same in the hands of said Mann, who sent the same to the sheriff of Nicholas county; that the said Mann knew that the summons aforesaid had not been executed by said Coffman in the county of Green-

brier; that said execution was placed by the sheriff of Nicholas in the hands of the defendant, Tobias Odell, his deputy, to be executed, who, on the 29th day of January, 1876, went to the residence of Collins, in Nicholas county, and finding said Collins in bed, exhibited to him the execution aforesaid, and explained to him the purport thereof; that said Collins said it was all wrong, but that the cattle were out in the field, but that he would not tell him to take them; that said Odell went out to the field, and was in the *acting* of driving the said seven head of cattle out of said field, when said Collins, armed with a gun, appeared upon the ground and forbade and prevented said Odell, by threats and force, from taking said cattle away; that said Odell then told him that he levied upon two horses which were in sight of said Odell, but which he did not take with him by reason of the threats of said Collins; that on the 3d day of February, 1876, the said Odell returned with a guard, and finding that said Collins and the cattle and horses had disappeared, followed on their trail, and overtaking them in the county of Webster, arrested said Collins, and taking from him the property aforesaid, sold it at the county seat of Nicholas county, on the 4th day of March, 1876, in the manner and after advertisement as required by law, and made return of said execution in the words and figures following, to-wit:

"Levied the within on seven head of cattle and two bay horses, taken as the property of John W. Collins, January 29 1876.

"TOBIAS ODELL, *Dept. S. N. C.*
*of J. J. Halstead.*

"Levied on one saddle, one pair saddle-pockets, February the 3d, 1876.

"TOBIAS ODELL, *Dept. S. N. C.*
*of J. J. Halstead.*

"I hereby certify that I offered the following property as named in my annexed return for sale at the

court-house of Nicholas county, on the 4th day of March, 1876 :

| | |
|---|---:|
| One bay horse sold for | $32 00 |
| Second bay horse | 45 00 |
| Seven head of cattle | 87 50 |
| One pair of saddle-pockets | 4 00 |
| One saddle | 5 55 |
| | $174 05 |

" The execution of this order being prohibited, it being necessary to summon six men over the age of twenty-one years *of age* to remove said property—cost of removing the said property, &c.—amount, $159.75.

" TOBIAS ODELL, *Deputy,*
" *For J. J. Halstead, S. N. C.*

" A copy.   Teste :
" MARK L. SPOTTS, *Clerk."*

*Alex. F. Mathews and A. C. Snyder,* for plaintiffs in error, cited the following authorities :

2 J. J. Mar. 137 ; 27 Mo. 293 ; 4 Blakf. (Ind.) 348 ; 5 Wend. 292 ; 3 Johns. 429 ; 4 Harr. (Del.) 284 ; 3 N. J. Law (2 Pen.) 412 ; Acts 1872–3, p. 655, §3 ; 3 Ired. 548 ; 2 Iowa 35 ; 5 Blackf. (Ind.) 97, 357 ; 39 Mo. 407 ; 2 Ill. 168 ; Acts 1872–3, p. 654. §1 ; 4 Hawks 283 ; 1 Nev. 188 ; 28 Barb. 669 ; 6 Hill 496 ; 5 Hill 285 ; 19 Johns. 39 ; 16 Ired. 391 ; 10 Humph. 53 ; 6 Ark. 41 ; *Id.* 182 ; *Id.* 371 ; Black on Tax Titles 185 ; 10 Rep. 76 ; 12 Rich. L. 251 ; 2 Wils. 384 ; 1 T. B. Mon. 154 ; 7 T. B. Mon. 386 ; 6 Rob. Pr. 675 ; 16 N. H. 26 ; 7 N. H. 211 ; *Id.* 209 ; 8 Leigh 454 ; 10 B. Mon. 293 ; 2 Strobh. 3 ; 11 Wis. 91 ; 1 Strange 509 ; Big. L. Cas. on Torts 279 ; 11 Rich. L. 413 ; 3 Hill 619 ; 10 Coke 76 a. ; 2 La. Ann. 651 ; Big. L. Case on Torts 249 ; 2 Am. Lead. Cas. 651 ; 3 Ired. L. 105.

*J. W. Harris and Samuel Price,* for defendants in error, cited the following authorities :

Acts 1872–3, ch. 226 §76 ; Big. on Torts 277, 279, 280 ; 12 B. 18 ; 6 Wend. 367 ; 2 Cow. 640 ; 10 Coke 68

b. ; Addison on Torts 650, 659 ; 9 Gratt. 131 ; Acts 1871 p. 210 ; 5 Leigh 649 ; Addison on Torts 641 ; 5 Gratt. 141 ; 6 Gratt. 197 ; *Id.* 287 ; 11 Gratt. 697 ; *Id.* 636 ; 2 Leigh 367 ; 6 Munf. 125 ; 1 Leigh 340, 344, 366, 369.

MOORE, JUDGE, delivered the opinion of the Court :

This proceeding being jointly against the judgment creditor, J. Mann, and the deputy sheriff, Odell, who acted in the execution of the *fieri facias*, I will consider their respective positions separately, and the law and the evidence applicable thereto ; because, I think, in this case, notwithstanding the defendants pleaded jointly "not guilty," the rules of protection are somewhat different as respects the one as a ministerial officer, and the other as the judgment creditor, and prime mover in the original proceedings.

The defendants having pleaded not guilty, and the issue being joined thereon, the parties, plaintiff and defendants by their attorneys, agreed "that any matter may be given in evidence that could be given in evidence if specially pleaded."

The defendants attempted to justify the taking of the property under the judgment and execution or *fi. fa.* The sheriff, Odell, especially attempted to seek protection under the following *process*, viz :

" STATE OF WEST VIRGINIA :

" *To the Sheriff of Nicholas County, greeting :*

" We command you that of the goods and chattels of John W. Collins, late in your bailiwick, you cause to be made the sum of $100.00, or the possession of nine head of cattle, which James Mann, lately before John W. Arbuckle, mayor of the town of Lewisburg, and *ex officio* a justice of Greenbrier county, recovered against him for debt, with legal interest from the 24th day of December, 1875, until paid, and $2.55 costs ; also the sum of seventy-five cents, which to plaintiff was adjudged, as well for damages which he sustained by reason of the detaining of

said debt as for his costs by him about his suit in that behalf expended, whereof John W. Collins is convicted as appears to us of record; and that you have the same before the justice of our said court at rules to be held in the clerk's office thereof, on the first Monday of March next, to render to plaintiff of the debt and damages aforesaid. And have then there this writ.

" Witness, Mark L. Spotts, clerk of our said court, at the court house of said county, the 10th day of January, 1876, and in the 13th year of the State.

" MARK L. SPOTTS.

" A copy. Teste:

" MARK L. SPOTTS, *Clerk.*"

" Where the trespass is justified, under *civil or criminal process*, whether it be specially pleaded, or given in evidence under a brief statement filed with the general issue, *the party* must prove every material fact of the authority under which he justifies. If the action is by the person against whom the process issued, it is sufficient for *the officer* who served it to prove the process itself, if it appears to have issued from a court of competent jurisdiction, &c. * * * But in trespass against the plaintiff in a former action, or against a stranger, or where the action is brought by a stranger whose goods have been wrongfully taken by the sheriff, under an execution issued against another person, the sheriff or his officers justifying under the process, will be held also to prove the judgment upon which it issued." 2 Greenleaf Ev. §629, and notes, 13th ed.

"A process being void, *the party* who sets it in motion, and all persons aiding and assisting him, are *prima facie* trespassers, for seizing property under it ; and acts which *an officer* might justify under process actually void, but regular, and apparently valid on its face, will be trespasses as against *the party*," *Kerr* v. *Mount*, 28 N. Y. 659. So in Hilliard on Torts, vol. 2, chap. 29, §5, it is said : "But the distinction is made, even in regard to property of the execution-debtor himself, that an *officer* may jus-

tify the seizure of property by alleging and showing a *fi. fa.* from the proper tribunal, but the *plaintiff* in such execution must show the judgment on which it issued."

Judge Cooley says : "The process that shall protect an officer must, to use the customary legal expression, *be fair on its face.* By this it is not meant that it shall appear to be perfectly regular, and in all respects in accord with proper practice, and after the most approved form ; but what is intended is, that it shall apparently be process lawfully issued, and such as the officers might lawfully serve. More precisely, that process may be said to be fair on its face, which proceeds from a court, magistrate, or body having authority of law to issue process of that nature, and which is legal in form, and on its face contains nothing to notify or fairly apprise the officer that it is issued without authority. When such appears to be the process, the officer is protected in making service, and he is not concerned with any illegalities that may exist back of this." Cooley on Torts 459, 460 and notes, citing the leading authorities. This rule is so universally received, that it would be supererogation for me to give a review in this opinion of the cases cited by him ; and I will therefore in addition only quote from the language of Judge Agnew, in *Cunningham* v. *Mitchell*, 67 Pa. St. 81, that : In the case of public officers, an inferior acting within the scope of his warrant, when apparently regular, is always protected ; unless the authority issuing it was without jurisdiction. It has been a question how far this protection extends, when the superior authority acts irregulary and illegally. But now the doctrine appears to be settled as it should be, that even in such case the inferior has to look only to his warrant, and cannot be required to rejudge the judgment of his superior. Certainly it must be considered as so settled in this State since the case of *Moore* v. *Allegheny City*, 6 Harris 58, in which Judge Bell examines the question very elaborately, and says, it is now settled that where the person or tribunal issuing the process has

jurisdiction of the subject matter, and the process is reg-
ular on its face, the officer executing it is not to be affec-
ed by any illegality in the previous proceedings.

"The distinction is between the usurpation of power
not conferred, and the irregular or illegal exercise of a
jurisdiction possessed. So in *Paul* v. *VanKirk*, 6 Bin.
125. Chief Justice Tilghman held, that a constable
and his assistant might justify upon an execution though
it was wholly irregular, saying: ' It is enough for
them to show an execution issued by competent authority.
Whether the execution is supported by the judgment is a
question in which it would be unreasonable for the law
to involve them.' When the warrant is issued by one
having no authority it will not protect, as held in *Stephens*
v. *Wilkins*, 6 Barr 260, and *Hilbish* v. *Hower*, 8 P. F.
Smith 93."

If the writ be found to be a lawful one, it next becomes
necessary for the officer's protection that he proceed upon
it according as the law directs; but this does not mean
that he shall obey to the letter every direction of the law,
whether important or unimportant, and whether or not
beneficial to any of the parties concerned. See Cooley
on Torts, 461. .

" The protection the officer receives from the apparent
validity of the process is personal to the officer and those
called in by him to assist in the service; that is to say,
it protects them against being made liable as trespassers in
obeying its commands. But if the officer has taken
property under it, and the fact that he acquired a special
property in the goods by the seizure comes into question;
it is not sufficient for him to show merely an apparently
valid writ, but he must go further and show that the
writ had lawful authority for its issue." Cooley on
Torts 463.

The distinction is, first, that where the officer is sued
as a trespasser by the debtor, he may take refuge under
the execution, as a defense. But, as said by Cowen,
Judge, in *Earl* v. *Camp*, 16 Wend. 566, " the rule is

one of *protection merely*; and beyond that is not meant to confer any right. The armour which it furnishes is strictly defensive. It is personal to the officer himself; and cannot be used to confer any right upon the wrong-doers under color of whose void proceedings he is called upon to act. But, second, if the officer has taken property under it, and the fact that he acquired a special property in the goods by the seizure comes into question ; as in the instances cited by Mr. Cooley and Mr. Green-leaf, as where the officer finds it necessary to bring re-plevin for the goods, or where he is sued by a stranger for wrongfully taking his goods, or where he is sued by a third person who claims the goods by assignment from the defendant in the proceedings, and whose title would be valid as against any levy that could not be supported by valid anterior proceedings, the officer would have to go back of his execution and show a valid judgment to sustain his claim to special property. *Parker* v. *Walrod*, 16 Wend. 514. Cooley on Torts 463. 2 Greenleaf Evid. §629. But mere irregularities in either the writ or what precedes it, are not fatal defects. Cooley's Torts 463. Looking then to the face of this writ, it must, in order to protect the officer, Odell, show the following requisites : 1st. That it is issued by a court or officer having authority of law to issue such process. 2d. That it is legal in form; and 3d, that it contains nothing on its face to notify or fairly apprise the officer that it is issued without authority.

By the 1st section of chapter 159, of Acts of 1871, p. 210, it is declared that the mayor of Lewisburg "shall have all the power and jurisdiction of *a justice* in both civil and criminal cases ; he shall be governed by the same rules and entitled to the same fees as a justice," &c. By chap. 226, §1, Acts 1872–3, p. 654, " the jurisdiction of justices and the powers of constables shall extend throughout their counties," and by section 3 of same Act, "The civil jurisdiction of justices of the peace shall extend to actions of assumpsit, debt, detinue and trover, if

the amount claimed exclusive of interest does not exceed one hundred dollars," &c.; and section 76 of same Act declares: " The person in whose favor a judgment is rendered by a justice, or who is entitled to receive the money due thereon, or any part of it, may file in the clerk's office of the county-court of the county in which the judgment was rendered, a transcript thereof, certified by the justice who has the lawful custody of the docket in which such judgment is entered; *and the said clerk may issue executions thereon in the same manner and with like effect as if the judgment had been rendered by the said court.*

" The transcripts filed as aforesaid shall be entered by the clerk in his execution docket," &c.

So far as the officer, Odell, is concerned in this case, it seems to me the writ of *fi. fa.* is sufficiently fair on its face to justify him in executing it, although it is not "perfectly regular, and in all respects in accord with proper practice, and after the most approved form." (Cooley's Torts 459–60.) It is apparently lawfully issued. It sufficiently appears to have issued upon a transcript of a judgment, rendered by the mayor of Lewisburg, and *ex officio* a justice of Greenbrier county, for an amount within the jurisdiction of a justice; it shows that the judgment was recovered against Collins *for a debt,* whereof he was convicted as appeared of record. It clearly indicates on its face that it was issued by the clerk of the county court of Greenbrier county, upon a transcript of the judgment filed and entered in the execution-docket, as required by statute. It is true that the clerk's attestation is not in the usual form, specifically showing the court of which he is clerk, but it is apparent from the face of the writ, and the law, that he is clerk of the county court, in this, that it commands the officer to " have the same before the justices of our said court at rules to be held in the clerk's office thereof." Only the county-court is held by " the justices," under our Constitution and laws; furthermore, under the statute none but the county-court's clerk can

issue a *fi. fa.* upon the transcript of the justice's judgment; and that transcript can be entered no place but in the execution docket of the county court; and as the writ states that it was for a judgment recovered for debt, "Whereof John W. Collins is convicted as *appears to us of record*," the inference is that it had been entered of docket in the clerk's office, as the law required. The *fi. fa.* is clearly for debt, and the introduction of the phrase, "*or the possession of nine head of cattle*," in the writ, is nonsensical surplusage, and does not vitiate the writ. I am therefore of opinion that the writ, so far as is apparent from its face, is valid; and that it was, as to Odell, sufficient to justify him in making a levy on the goods and chattels of Collins. Nor does it appear from the bill of exceptions, that Odell exceeded the commands of the writ in making the levy he did.

The second point assigned by the plaintiff is, that it was error. for the court to state during the argument of the case of its own motion, and in the hearing of the jury, "that it was not necessary in order for the officer to justify under the said execution that he should show that John W. Arbuckle was mayor of Lewisburg, or that the mayor of Lewisburg had the powers of a justice." As the officer was justifying under the execution, and as the execution was sufficiently valid for that purpose, the officer, as we have seen, was not under the law required to go behind the execution; therefore the court did not mistake the law in that respect. It was clearly a question of law for the court to expound, and not a question of fact for the jury to decide. And as the parties had agreed that in addition to the general issue pleaded, that any matter might be given in evidence that could be given in evidence if specially pleaded I apprehend that the defendant Odell stood in the same position as if he had pleaded separately justification; and it was not for the plaintiff to force him into offering evidence not necessary to this defense; and if the counsel, as the bill of exceptions state, while arguing the cause before

the jury, stated to them incorrectly what had been the ruling of the court upon the motion to exclude from the jury the execution, it was the duty of the court to interrupt him and state to him, in the presence of the jury, what the court had really stated, otherwise, the court would suffer abuse to itself by being misrepresented before the jury, and also permit the jury to be deceived or misled by the counsel's incorrect statement. Again the bill of exceptions does not show, that at the time the court overruled the motion to exclude the execution from the jury, that the plaintiff excepted to the ruling; and that the plaintiff did so except is not even inferable from the bill of exceptions; but even if he had so excepted, it would not have availed against the defendant Odell, even if it were true that the execution alone could not justify Mann and that he, Mann, would have to also show a valid judgment, because it would have been competent for the jury to have acquitted one of the defendants and found the other guilty and assessed damages against him, as decided in *Tracy* v. *Cloyd et al.,* 10 W. Va. 19.

It is further argued that the property was seized and sold without any levy of the execution. The return shows *prima facie* a levy; and if we are permitted to look to the bill of exceptions, sufficient appears to show a levy in fact. The officer had the property within his power and indicated his intention to treat them as taken under the execution from the absolute control of Collins, when Collins, armed with a gun, appeared upon the ground and resisted the taking of the cattle from the field; and as the officer told Collins, then and there, that he levied the execution on the two horses which were then in sight, that was a sufficient levy as to the horses so far as Collins was concerned, *Connah* v. *Hale,* 23 Wend. 462; Crocker's Sheriffs §§435, 436; and as to the saddle and saddle-pockets, there is nothing against the *prima facie* showing of the levy made by the officer's return.

For the foregoing reasons, I am of opinion that as

24

to the officer, Odell, the verdict of the jury and the judgment of the court should have been for him.

Thus having considered the case as to the officer, Odell, the next duty is to consider it as to the judgment-creditor, at whose instance the proceedings were instituted against Collins.

It is clear from the authorities cited in considering the case as to Odell, there is an established distinction between the plaintiff at whose suit an execution is issued and the officer to whom the execution is directed to be executed ; the former, if sued, must show a valid judgment which authorizes the execution, but it is sufficient for the latter to show the execution, and if that has nothing on its face which renders it irregular and void, it is to him a justification ; therefore it is not necessary to multiply authorities on that point, and I will cite in addition only the pertinent case of *Clay and Kerley* v. *Caperton,* 1 Mon. 10, and Cooley's Torts 468.

It has been intimated that this case comes under the principle laid down by Lord Abinger, C. B., in *West* v. *Smallwood,* 3 M. & W. Exch. 418, that: "Where a magistrate has a general jurisdiction over the subject-matter, and a party comes before him and prefers a complaint, upon which the magistrate makes a mistake in thinking it a case within his authority, and grants a warrant which is not justifiable in point of law, the party complaining is not liable as a trespasser, but the only remedy against him is by an action upon the case, if he has acted maliciously." Judge Cooley says : "The party is liable where he participates in the unlawful action of either the magistrate or the ministerial officer. He is, in general, responsible for setting the court or magistrate in motion in a case where they have no authority to act; and perhaps to this rule there is no exception but this : that if the jurisdiction depends upon the facts, and these are presented to a court having general jurisdiction of that class of cases, and the court decides that it has authority to act, and proceeds to do so, this decision protects not the offi-

cer merely, but the party also." It may be that this case comes in that class, and that the court below so considered it, but as the bill of exceptions is not plain upon that point, and in the view I take of this case, I deem it unnecessary to consider that question here.

It is a settled principle of law that if the summons to answer an action is not duly served upon the defendant, no judgment can be given against him. "A judgment pronounced without service of process, actual or constructive, and without the defendants knowing that a court has been asked to adjudicate upon his rights; is regarded with such disfavor at law that a variety of motions, writs, and proceedings, are there provided to overthrow it ; and in many courts, it is at all times and upon all occasions liable to be entirely disregarded upon having its jurisdictional infirmity exposed. But proceedings in equity are peculiarly appropriate for the exposure of this infirmity." Freeman on Judgments, §495

One of the points of error assigned in this case is, that it was affirmatively shown that the summons commencing the action upon which said judgment was rendered, had been served in Nicholas county, beyond the jurisdiction of a justice of Greenbrier county, and that the defendant, Mann, was informed of this fact, consequently said judgment was void, and no valid execution could be issued upon it." The return of the officer does not disclose such irregularity, but on the contrary it purports to have been regularly served by leaving a copy of it with John W. Collins. Nothing appears upon the face of the proceedings to show that the summons had not been duly served on John W. Collins, or that either the justice, or the present defendant, Mann, knew at the time the judgment was rendered that the summons had not been properly served.

If it be true that the summons was served on Collins in the county of Nicholas, beyond the jurisdiction of the justice and power or authority of the constable, it was a matter immediately known to Collins, but he remained

silent and permitted the judgment and execution to go against him, and thus aided in bringing about the very trespass of which he complains; thus of his own wrong taking advantage of the justice and Mann by permitting them to proceed to judgment and execution. How far his conduct in that respect might enter into the merits of the case under the action he has seen fit to bring, or what effect it should have, is not now necessary to be considered. The summons having been returned regularly executed, the justice proceeded to a judgment, proper to sustain a *fieri facias*, but perhaps not a *distringas*.

The bill of exceptions states, "that the said Mann knew that the summons aforesaid had not been executed by said Coffman in the county of Greenbrier." It is plain from the showing of that fact, that the plaintiff, Collins, when met in this action by the judgment in justification of Mann, attempted in some way to impeach the return of the officer as to the execution of the summons. Whether that can be done or not, as between the same parties, in this collateral way, is a mooted question; and if it can be done depends much upon the character of the pleadings. In this case there are no regular pleadings after the "*general issue.*" The parties contented themselves by the *hap-hazard* way of agreeing "*that any matter may be given in evidence that could be given in evidence if specially pleaded.*" Such a practice is not sanctioned by the rules of pleading, and is objectionable when questions of subtle and nice distinction are to be settled; nor can the Appellate Court take upon itself to determine what was the real question at issue below. Such is the difficulty now presented in this case. I can readily perceive that had Mann regularly pleaded his judgment and execution in justification, that Collins might have replied that the judgment was obtained by fraudulent conduct on the part of Mann in procuring the officer to make a false return, or in fraudulently obtaining the judgment knowing at the time that the process had not been duly executed, or some replication directly impeach-

ing the judgment. Such may have been the intention of the parties, and the nature of the evidence, but we cannot discover it. But even if the pleadings had put the matter in issue as suggested, we could not say from the bill of exceptions that the defendant, Mann, knew at the time he obtained the judgment, or even at the time he sued out the execution, that the summons had not been duly executed; the fact of his knowledge in that respect is too vaguely stated to enable this Court to fix the time, and the fact that the verdict of the jury was for the defendant, and that it was approved by the judgment of the court, goes far to impress me that the proof of the plaintiff was really insufficient to sustain the issue, whatever it might have been, intended to have been made before the court and jury. I am therefore of the opinion that the record discloses no error that would justify this Court in reversing the judgment of the court below. The judgment should be affirmed with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.